MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2013 ME 106
Docket:        Aro-13-27
Argued:        September 9, 2013
Decided:       December 5, 2013

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, <u>SILVER</u>, MEAD, GORMAN, and JABAR, JJ.

## STATE OF MAINE

v.

## CHRISTOPHER J. JOHNDRO

SILVER, J.

[¶1]  The State appeals from an order of the Superior Court (Aroostook County, *Hunter, J.*) granting Christopher Johndro's motion to suppress evidence. The Superior Court found that search warrants for Johndro's house, garage, and car were not supported by probable cause.  The court further found that, because the initial affidavit was so lacking in indicia of probable cause, officers did not rely on the warrants in objectively reasonable good faith.  Finally, the court concluded that evidence seized pursuant to the third search warrant must be excluded as fruit of the poisonous tree.  We affirm the order granting Johndro's motion to suppress.

## I.  BACKGROUND

[¶2]  On April 15, 2009, Chief Stacey Mahan of the Limestone Police Department was called to investigate a burglary at 257 Long Road in Limestone.

Several footprints were found near the garage, and a footprint inside the house appeared to match the footprints outside. At Mahan's request, a Maine State Police Trooper arrived on scene with his dog and conducted a search of the area. The dog followed footprints from the driveway to Blake Road, located to the east of the residence.

[¶3] Mahan was called to the scene of another burglary in Limestone later that day, this time at 646 Blake Road. A footprint found inside the residence appeared to match the footprints found at the scene of the Long Road burglary.

[¶4] The following day, April 16, a Limestone resident informed Mahan that he had observed a "strange" vehicle driven by a male operator at 257 Long Road around noon the previous day. He described the vehicle as a Dodge Intrepid bearing the license plate 2196MD.

[¶5] Later in the day, a local resident named Vinal Paul Chasse informed Mahan that Chasse's stepfather, a trash collector in Limestone named Carl Morin, had observed a vehicle on Blake Road, also around noon the previous day. According to Chasse, Morin saw the vehicle pull in and out of "a couple" of driveways, which made him nervous. Morin had written down the license plate number, which Chasse provided to Mahan. The number, 2196RD, was assigned to a 2002 Dodge Intrepid registered to Christopher Johndro. Mahan ran a criminal history check on Johndro and found that he had multiple burglary convictions.

[¶6] Mahan immediately completed an affidavit containing only the above facts and submitted it, along with a proposed search warrant for Johndro's house and car, to a justice of the peace on April 16, 2009. The affidavit did not mention what items, if any, had been taken from the homes, nor did it provide any other information regarding the reason for which a search was requested. The draft search warrant did include a list of items that purportedly constituted evidence of burglary, including loose change, a green pillowcase, shoes, jewelry, firearms, and safes. The justice of the peace signed and issued the proposed warrant that same day, and Mahan, along with other officers, executed it at Johndro's residence. They seized several items, including marijuana, loose change, and a diamond ring. Later that day, using the same affidavit, Mahan applied to the same justice of the peace for a second warrant to search a shed behind the house. The justice of the peace granted the warrant. The search of the shed did not produce any further evidence.

[¶7] Five days later, on April 21, 2009, Mahan applied to the same justice of the peace for a third warrant authorizing another search of Johndro's house. The affidavit in support of this warrant was from another officer, who had observed a gold wristwatch inside Johndro's house during the first search and had later learned that it matched the description of a watch connected to a burglary in

4

Caribou.[1] The affidavit further stated that officers had learned that Johndro might have hidden evidence in an area of the house that was not searched during the execution of the first warrant. The justice of the peace issued the third warrant, pursuant to which the police seized additional evidence.

[¶8] On November 6, 2009, Johndro was indicted on five counts of burglary (Class B), 17-A M.R.S. § 401(1)(B)(4) (2012), two counts of theft (Class B), 17-A M.R.S. § 353(1)(B)(2) (2012), and three counts of theft (Class C), 17-A M.R.S. § 353(1)(B)(6) (2012). Johndro entered not guilty pleas on all counts on January 21, 2010, and later filed a motion to suppress the evidence obtained pursuant to the three search warrants. The trial court granted the motion, finding that the first affidavit did not establish probable cause for a search, and that evidence seized pursuant to the third search warrant must be suppressed as fruit of the poisonous tree. The State appealed. Because we conclude that the first affidavit provided an insufficient basis for a finding of probable cause, and that the second affidavit was tainted by the illegality of the first search, we affirm the suppression of the evidence obtained in the three searches.

---

[1] It is unclear from the record if this affidavit referred to a separate burglary in Caribou, or if the affiant mistakenly referred to Caribou instead of Limestone. The trial court did not address the apparent discrepancy.

## II. DISCUSSION

### A.    Probable Cause

[¶9]   When the State appeals an order suppressing evidence, we directly review the finding of probable cause made by the magistrate[2] who issued the warrant.  *State v. Crowley*, 1998 ME 187, ¶ 3, 714 A.2d 834.  Our inquiry is limited to whether there is a substantial basis for the finding of probable cause.  *State v. Diamond*, 628 A.2d 1032, 1033 (Me. 1993).  We must "give the affidavit a positive reading and review the affidavit with all reasonable inferences that may be drawn to support the magistrate's determination."  *State v. Higgins*, 2002 ME 77, ¶ 20, 796 A.2d 50 (quotation marks omitted).  Although we must test the affidavit in a commonsense fashion, the test for probable cause is restricted to the four corners of the affidavit.  *State v. Thornton*, 414 A.2d 229, 233 (Me. 1980).

[¶10]   The magistrate must determine whether probable cause exists based on the "totality of the circumstances" test adopted in *Illinois v. Gates*, 462 U.S. 213 (1983).  *Crowley*, 1998 ME 187, ¶ 3, 714 A.2d 834.  This test requires a practical, commonsense determination whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be

---

[2]   We clarify that only a judge or a justice of the peace may issue a search warrant pursuant to M. R. Crim. P. 41(a).  Traditionally, a person with less authority than a judge, but who had the authority to issue search warrants, was referred to as a magistrate.  *See e.g.* 15 M.R.S. § 55 (2012).  Thus, although much of our search and seizure precedent refers to the findings of a magistrate, we apply the same principles to cases involving search warrants issued by a justice of the peace.

6

found in a particular place. *Gates*, 462 U.S. at 238. Further, the affidavit must set forth some nexus between the evidence to be seized and the locations to be searched. *State v. Samson,* 2007 ME 33, ¶ 15, 916 A.2d 977.

[¶11]  Here, the witnesses' veracity is not a concern.[3] The witnesses were disinterested "citizen informants" whose accounts were not inherently unreliable. *See State v. Perrigo*, 640 A.2d 1074, 1076 (Me. 1994.)  However, even if we accept the State's contention that it was, in fact, Johndro's car that the witnesses observed in the vicinity of the crime scenes on the day the burglaries were reported,[4] the affidavit nevertheless fails to provide a substantial basis for a finding of probable cause.

[¶12]  The affidavit provides no information about what items, if any, were stolen during the burglaries.  The State urges us to look to the proposed warrant, which included a list of items to be seized as evidence of the crime of burglary. The State argues that, because we must give the affidavit a commonsense review, we should consider all of the materials that were presented to the justice of the

---

[3]  That Mahan received one witness's statement from a third party is irrelevant to the probable cause analysis under the "totality of the circumstances" test.  Evidence that would be inadmissible at trial, including hearsay, may properly be considered in evaluating whether probable cause exists. *Draper v. United States*, 358 U.S. 307, 311-12 (1959); *Brinegar v. United States*, 338 U.S. 160, 172-73 (1949). *See also Illinois v. Gates*, 462 U.S. 213, 241-242.

[4]  According to Mahan's affidavit, the first witness described the vehicle he saw as "possibly" a tan Dodge Intrepid, and indicated that he "felt" that the license plate number was 2196MD, which was similar to, but did not match, Johndro's license plate number.  The search warrant indicates that Johndro's 2002 Dodge Intrepid is silver.

peace as part of Mahan's search warrant application. However, although a warrant may incorporate an accompanying affidavit by reference, *Groh v. Ramirez*, 540 U.S. 551, 557-58 (2004), our inquiry when reviewing a finding of probable cause is restricted to the four corners of the affidavit. *Thornton*, 414 A.2d at 233; *State v. Ruybal*, 398 A.2d 407, 414 (Me. 1979); *State v. Smith*, 381 A.2d 1117, 1120 (Me. 1978). Thus, the list of items in the proposed warrant cannot remedy the affidavit's failure to establish probable cause.

[¶13]  We recognize that "innocent behavior frequently will provide the basis for a showing of probable cause." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). However, "[w]ithout a specific allegation of criminal activity to color the noncriminal behavior described in [the] affidavit, there is no information from which to conclude that evidence of criminal activity would be found at the time of the search." *State v. Diamond*, 628 A.2d 1032, 1034 (Me. 1993). Here, the affidavit indicates that both witnesses saw a "suspicious car" in the area of the burglarized homes around noon on the day the burglaries were discovered. It provides no indication as to what time the burglaries occurred, or what time they were reported. A vehicle being driven down the road in the middle of the day, and even pulling in and out of several driveways, without more, is not a sufficient nexus to criminal activity, notwithstanding the subjective feelings of the witnesses who observed this behavior. This is not a case where innocent behavior is used to

corroborate an informant's specific allegation of criminal activity. *See Illinois v. Gates*, 462 U.S. at 243 n.13. Nothing in either the witnesses' statements or Mahan's affidavit links the noncriminal behavior to the burglaries.

[¶14] Johndro argues that it was improper for the justice of the peace to consider his prior burglary convictions as part of the probable cause analysis. The affidavit's reference to Johndro's convictions did not compromise the neutrality of the justice of the peace. Past criminal activity and interactions with law enforcement provide background and are properly considered as part of the totality of the circumstances. *State v. Estabrook*, 2007 ME 130, ¶ 7, 932 A.2d 549. Standing alone, however, this history would not give a prudent person reason to believe that evidence of the burglaries would exist in Johndro's home. *Id.*

[¶15] This is especially true because there is no indication that Johndro was the person driving the car near the crime scenes. According to the affidavit, one witness observed that the operator was male; no further description was provided. The affidavit's failure to identify Johndro as the operator renders the weak connection between the vehicle and Johndro's home even more tenuous. The State urges us to infer that a burglar who drives his car to the scene of a burglary will almost certainly transfer stolen property from the car to his own residence. Even if we accept that proposition, the State's theory requires us to go one step further and

to assume that Johndro was the person who drove the car and committed the burglaries. The basis for this assumption is simply lacking from the affidavit.

[¶16] We are required to draw all reasonable inferences in favor of a finding of probable cause. The inferences the State asks us to draw, however, are so attenuated as to exceed the bounds of reasonableness. We cannot say that observation of a car driving in the vicinity of a crime scene gives rise to a fair probability that evidence of that crime will be found inside the home of the car's registered owner. Accordingly, there is no substantial basis for the finding of the justice of the peace that the affidavit demonstrated probable cause sufficient to justify a search of Johndro's home, car, and shed.

## B.    The Good Faith Exception

[¶17] The Fourth Amendment does not require suppression of evidence seized pursuant to a facially valid warrant if officers relied on the warrant based on an objectively reasonable belief in the existence of probable cause. *United States v. Leon*, 468 U.S. 897, 926 (1984). An officer cannot manifest objective good faith in relying on a search warrant based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable. *Id.* at 923 (quotation marks omitted).

[¶18] In *Diamond*, we concluded that, because an affidavit based entirely on noncriminal behavior contained no information from which to conclude that

evidence of criminal activity would be found at the time of the search, officers' reliance on the warrant was not objectively reasonable. 628 A.2d at 1034. In that case, a drug enforcement agent learned from the federal Drug Enforcement Agency that a confidential source, whose information had already led to dozens of arrests for indoor marijuana growing operations, had relayed that Diamond had received four shipments from two companies identified as "A.G.S. Inc." and "Light Mfg." *Id.* at 1033. The affidavit did not specify that the informant suspected these companies of being suppliers of marijuana seeds or growing equipment. *Id.* Further investigation revealed that tax assessors had been denied access to the inside of Diamond's residence, and that Diamond's monthly electricity use far exceeded that of a typical residential customer. *Id.* at 1034. While conducting surveillance in a heavily wooded area surrounding Diamond's property, the agent was accosted by two dogs, which came from and returned toward the direction of Diamond's house, apparently to alert Diamond to the presence of strangers. *Id.* A justice of the peace issued a search warrant based on these facts, and agents seized marijuana plants and indoor growing equipment from Diamond's house the same day. *Id.* at 1033. On these facts, we held not only that the affidavit failed to establish probable cause, but also that the good faith exception did not apply. *Id.* We concluded that reasonable judges could not disagree that the affidavit, based

solely on noncriminal behavior, failed to establish probable cause, and that the agent's reliance on the warrant was not objectively reasonable. *Id.* at 1034.

[¶19] That reasoning compels the same result here. Although the affidavit indicates that two burglaries occurred, the only activity that could potentially be linked to Johndro—his car having been seen driving in the area—is entirely noncriminal and unsuspicious on its own. Moreover, there is no specific allegation that Johndro, or anyone with ties to his residence, engaged in suspicious or criminal activity. In *Diamond*, we characterized the affidavit as "bare bones," *id.* at 1034, even though it recited that the informant's information had led to dozens of arrests, *id.* at 1033. Similarly, the affidavit in this case is based entirely on noncriminal behavior and fails to explain how such behavior provides a basis for suspecting that evidence of the burglaries would be found in Johndro's home or vehicle.

[¶20] Nothing in the record suggests that Mahan intended to mislead the justice of the peace, or that any of the information in the affidavit was false. However, an officer's subjective good faith is not the appropriate inquiry. Because nothing in the affidavit establishes a connection between the burglaries and Johndro's residence, officers' reliance on the warrant was not objectively reasonable.

12

C.     Fruit of the Poisonous Tree

[¶21]  The exclusionary rule applies to evidence obtained as a direct result of an illegal search and seizure, as well as to evidence later discovered and found to be derivative of an illegality.  *Segura v. United States*, 468 U.S. 796, 804 (1984). Illegally seized evidence need not be excluded if the connection between the illegal police conduct and the discovery and seizure of the evidence is so attenuated as to dissipate the taint.  *Id.* at 805 (quotation marks omitted).  However, any evidence obtained through the exploitation of police illegality must be excluded as fruit of the poisonous tree. *Wong Sun v. United States,* 371 U.S. 471, 488 (1963).

[¶22]  The third warrant, which permitted officers to search Johndro's house again five days after the initial search, relied heavily on observations officers made while executing the first warrant.  Had officers not been illegally present inside of Johndro's home, they would not have observed the gold wristwatch matching the description of a watch that had been stolen during a burglary.  The third warrant undoubtedly exploited information gleaned from the illegal search; therefore, evidence seized pursuant to that warrant must be suppressed as well.

The entry is:

Judgment affirmed.

_____

**On the briefs:**

Todd R. Collins, District Attorney, and Kurt A. Kafferlin, Asst. Dist. Atty., Prosecutorial District 8, Houlton, for appellant State of Maine

Michael E. Carpenter, Esq., Houlton, for appellee Christopher J. Johndro

**At oral argument:**

Kurt A. Kafferlin, Asst. Dist. Atty., for appellant State of Maine

Michael E. Carpenter, Esq., for appellee Christopher J. Johndro

Aroostook County Superior Court docket number CR-2009-502
FOR CLERK REFERENCE ONLY