MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2016 ME 103
Docket:       Lin-15-369
Argued:       April 5, 2016
Decided:      July 12, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and
              HUMPHREY, JJ.

STATE OF MAINE

v.

JAMES R. SIMMONS

*****

STATE OF MAINE

v.

FREDERICK A. CAMPBELL

HJELM, J.

[¶1]  The State appeals from an order entered by the Superior Court (Lincoln County, *Billings, J.*) suppressing evidence of cellular telephone records, seized pursuant to search warrants, for defendants James R. Simmons and Frederick Campbell after the court determined that the warrants were not supported by probable cause.  We conclude that the affidavits establish probable cause for the State to seize those portions of Simmons's cell phone records relating to historical cell site location data for June 21, 2012, and we therefore vacate that part of the

suppression order. We affirm the remaining aspects of the suppression order as to Simmons and the order in its entirety as to Campbell.

I. BACKGROUND

[¶2] Kenneth G. MacMaster of the State Fire Marshal's Office was involved in the investigation of two structure fires that took place in Friendship on separate dates in June 2012. One of the fires occurred on property belonging to James Simmons, and the other occurred on property belonging to Donald Simmons. MacMaster submitted three separate applications for search warrants, each supported with an affidavit, to obtain cellular telephone records belonging to Donald Simmons, James Simmons, James Simmons's wife, and Campbell. The first application sought cell phone records of both James Simmons and Donald Simmons. The second application added a request for Campbell's cell phone records. The only relevant change in the third affidavit was that the State now sought the cell phone records of James Simmons's wife. The information in the affidavits supporting the three warrant applications is substantially identical and includes the following facts.

[¶3] Donald Simmons and James Simmons, who are not related, are both commercial fishermen. Campbell is James Simmons's sternman. James Simmons told MacMaster that he was involved in a "commercial fishing feud" with Donald Simmons. According to a marine patrol officer who assisted the Fire Marshal's

Office with the investigation, during the course of that feud hundreds of lobster traps belonging to both men were cut, James Simmons was arrested for criminal threatening for shooting a rifle "in the direction" of Donald Simmons, and gunshots were fired at James Simmons's boat.

[¶4]  The first of the two fires occurred during the early morning hours of June 10, 2012, and caused significant damage to buildings, along with their contents, that James Simmons owned and used for his fishing business.  The second fire occurred on June 21 on property owned by Donald Simmons and destroyed a large boathouse, along with a boat owned by another person, which was stored inside the boathouse.  That fire was first reported shortly after 10:00 p.m.  The Fire Marshall's Office determined that both fires were "incendiary."

[¶5]  James Simmons told MacMaster that at the time of the June 10 fire that damaged his property, he was sleeping on his boat in Portland Harbor and learned about it the next morning when he turned on his telephone and received a text message from his wife.  James Simmons accused Donald Simmons of starting the June 10 fire.  Donald Simmons told MacMaster that he was fishing offshore at the time of the June 10 fire but believed that the June 21 fire on his property was started by James Simmons and Campbell in retaliation for the June 10 fire.

4

[¶6]   Donald Simmons's sternman told investigators that at approximately 8:30 p.m. on June 21, he saw a truck speeding away from the direction of Donald Simmons's property, where the fire was reported roughly ninety minutes later, and that although he could not see who was driving, he was certain that the vehicle was James Simmons's.  James Simmons's wife told MacMaster that from 8:30 p.m. that night, she was with James Simmons at their home in Friendship and that as far as she knew, his truck was in the driveway the entire night.  As for Campbell, another person told MacMaster that on the evening of June 21 Campbell had been at the home of an acquaintance and left around dark, saying that he would return, but did not.

[¶7]   The State submitted three applications for search warrants between June 2012 and February 2013.  As the applications related to James Simmons and Campbell, the State sought to obtain cell phone records relating to the limited hours surrounding both fires.  The requested warrants were for records containing "[a]ll stored communications and other files reflecting communications;" all files that had been accessed; "[a]ll connection logs, cellular tower hits and records of user activity," including the connection date and time, short message service and multimedia messaging service use; and "[a]ll records and other evidence . . . including, without limitation . . . mailing addresses, billing records . . . and any other identifying information, whether such records or other evidence are in

electronic or other form." In the applications, MacMaster stated that the records for James Simmons and Campbell "will likely reveal the whereabouts of both men around the time of both [a]rson fires . . . . Potentially, the records could reveal communications about the incidents and potential accomplice information." MacMaster presented the warrant applications to a Maine District Court judge (*Dow, J.*), who issued the warrants as requested by the State.

[¶8] On June 19, 2014, the State filed criminal complaints against James Simmons and Campbell, charging them each with two counts of arson, 17-A M.R.S. § 802(1)(A), (B)(2) (2015), relating to the June 21 fire on Donald Simmons's property. They were subsequently indicted for those crimes. James Simmons filed a motion to suppress evidence seized as a result of the search warrants, arguing that the warrants were not supported by a showing of probable cause. Campbell joined the motion. After a nontestimonial hearing, the court (Lincoln County, *Billings, J.*) granted the motion, concluding that the affidavits failed to establish probable cause to believe that either James Simmons or Campbell were involved in the June 21 fire.

[¶9] With the approval of the Attorney General and pursuant to 15 M.R.S. §§ 2115-A(1), (5) (2015) and M.R. App. P. 2(a)(4) and 21(b), the State timely appealed.

## II. DISCUSSION

[¶10]  The State argues that, contrary to the court's determination, MacMaster's affidavits contained sufficient evidence for the magistrate to find that there was probable cause to believe that James Simmons and Campbell were criminally involved in the June 21 fire on Donald Simmons's property and that cell phone records of historical cell site location information would contain evidence of their criminal activity.[1]  Although the warrants authorized the seizure of recorded data that include but go beyond historical location information, at oral argument the State indicated that it is now challenging only the portion of the order suppressing records of historical cell site location information.

[¶11]  On an appeal from an order granting a motion to suppress evidence seized pursuant to a search warrant, "we directly review the finding of probable cause made by the magistrate who issued the warrant." *State v. Johndro*, 2013 ME 106, ¶ 9, 82 A.3d 820 (footnote omitted).  A finding of probable cause rests on "a practical, commonsense determination whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* ¶ 10.  In order to meet

---

[1]  The State also asserts that the court erred when it examined the warrants for a showing of probable cause instead of the lower standard of reasonable articulable suspicion.  The State sought the warrants based on a probable cause standard, however, and it did not advocate a different standard to the trial court.  The State therefore has not preserved this issue for appellate review.  *See State v. Blais*, 416 A.2d 1253, 1256 n.2 (Me. 1980).

the probable cause standard, the affidavit "must set forth some nexus between the evidence to be seized and the locations to be searched." *State v. Gurney*, 2012 ME 14, ¶ 33, 36 A.3d 893 (quotation marks omitted). Such a nexus may be "inferred from the type of crime" and "the nature of the items sought." *Id.* (quotation marks omitted). Descriptions of noncriminal activity in a search warrant affidavit cannot support a finding of probable cause unless the warrant also contains allegations of criminal conduct that "color" the noncriminal activity. *See State v. Diamond*, 628 A.2d 1032, 1034 (Me. 1993).

[¶12] Our inquiry on appeal is limited to whether there is a substantial basis for the probable cause finding. *Johndro*, 2013 ME 106, ¶ 9, 82 A.3d 820. We review only the information within the "four corners" of the affidavit, *id.*, but we do so construing the information in the affidavit in a positive light and allowing for "reasonable inferences that may be drawn to support the magistrate's determination," *id.* (quotation marks omitted). Legal conclusions are reviewed de novo. *State v. Cote*, 2015 ME 78, ¶ 9, 118 A.3d 805.

[¶13] We first consider the State's challenge to the order suppressing evidence as to Campbell, and then turn to the suppression of evidence against James Simmons.

8

## A. Frederick Campbell

[¶14] The only facts contained in the affidavits bearing on Campbell's suspected role in the June 21 fire are that Campbell worked as James Simmons's sternman, and that on the night of the fire, he left the house of a friend he was visiting and expressed an intention to return to the residence but did not do so.

[¶15] This is not enough to establish probable cause. Although the affidavits may be seen as an attempt to establish a nexus between Campbell's employment as James Simmons's sternman and the ongoing feud between James Simmons and Donald Simmons, they do not contain allegations of any criminal activity planned, anticipated, or committed by Campbell that could be used to "color" the significance of his noncriminal activity. *See Diamond*, 628 A.2d at 1034. Even when the information in the affidavits is viewed in a positive light with allowance for all reasonable inferences, *see Johndro*, 2013 ME 106, ¶ 9, 82 A.3d 820, the information is too meager to support a probable cause determination that Campbell had anything to do with the June 21 fire, much less a finding that evidence of criminality would be found in his cell phone records. The court therefore did not err by concluding that the issuance of the warrant for his cell phone records violated his constitutional rights.

B.     James Simmons

[¶16]  The affidavits did not contain information that would allow a probable cause determination that James Simmons had any criminal involvement in the June 10 fire, which occurred on his own property, or that any of his cell phone records for that night would contain information of criminal activity.  The court therefore correctly suppressed evidence of his cell phones records for June 10.

[¶17]  In contrast, the information contained in the affidavits drawing a connection between James Simmons and the June 21 fire on Donald Simmons's property is sufficiently incriminating to support a probable cause determination that James Simmons had some criminal involvement in that fire.  The affidavits state that James Simmons was engaged in an overtly and sometimes dangerously hostile relationship with Donald Simmons.  The affidavits also provide information that on the night of the June 21 fire, Donald Simmons's sternman saw James Simmons's truck traveling at a high rate of speed away from the location of the fire less than two hours before the fire was reported.  The statement of Donald Simmons's sternman calls into question an alibi provided by James Simmons's wife that his truck remained parked in their driveway the entire night.  James Simmons's wife's statement could reasonably be viewed as an effort to create false exculpatory information, which itself has an inculpatory effect.  Thus, taken as a whole and viewed in a positive manner toward the finding of probable cause, the

information contained in the affidavits is sufficient to indicate that James Simmons had a significant motivation and opportunity to commit arson, and it supports the magistrate's determination that there is probable cause to believe that James Simmons had some involvement in the June 21 fire.

[¶18]   Based on the limited challenge the State presents here, the next question is whether that information also supports the probable cause determination that evidence of criminal conduct would be found in historical cell site location records associated with James Simmons's cellular telephone for June 21, 2012.

[¶19]   Evidence of James Simmons's location at times relevant to the June 21 fire was clearly important to the investigation and any resulting prosecution of him for arson.   James Simmons's wife placed him—and his vehicle—at their residence during the evening of the fire, but another witness saw his vehicle being driven away from the location of the fire at a high rate of speed not long before the fire was reported.   Therefore, James Simmons's whereabouts on the evening of June 21 is a material issue in the case.

[¶20]   The affidavit contains information that James Simmons possesses and uses a cellular telephone, because that was the evident means by which he learned of the fire that damaged his property on June 10, when he received a text message sent from his wife after he turned on his phone.

[¶21] The technological process that generates cell site location information has been explained in cases where governmental entities have sought that type of information. *See, e.g.*, *In re Application of the United States for Historical Cell Site Data*, 724 F.3d 600, 613 (5th Cir. 2013); *In re Applications of the United States for Orders pursuant to 18 U.S.C. 2703(d)*, 509 F. Supp. 2d 76, 78-79 (D. Mass. 2007); *In re Application of the United States for an Order Authorizing the Installation and Use of a Pen Register*, 402 F. Supp. 2d 597, 599 (D. Md. 2005). Cell phone providers use cell site towers to provide coverage. These towers have antennae that receive and transmit signals from cellular telephones in a given area. When a cell phone is present in areas serviced by different towers, the phone generally switches to the tower that provides the best reception. Cell service providers create and maintain records of the location of the tower used by a cell phone and the time of that use. The purpose of those records is for the carrier to "perhaps . . . monitor or optimize service on its network or to accurately bill its customers for the segments of its network that they use." *In re Application of the United States for Historical Cell Site Data,* 724 F.3d at 611-12. That same information makes it possible to identify at least the general location of a cell phone at the time the phone connects to a tower. *See generally id.* at 613-14; *United States v. Graham*, 846 F. Supp. 2d 384, 392 (D. Md. 2012) (noting that historical cell site location data "only reveal[s] which cellular towers were used to

12

route a particular call.  By extension, this information can only reveal the general vicinity in which a cellular phone is used."); Aaron Blank, *The Limitations and Admissibility of Using Historical Cellular Site Data to Track the Location of a Cellular Phone*, 18 Rich J.L. & Tech. 3, 5-8 (2011).

[¶22]  For that reason, historical cell site location data for James Simmons's cell phone could be expected to have evidentiary value, because those data could be reasonably expected to provide information about his approximate location and travel route at the times relevant to the June 21 fire.  Therefore, we conclude that the affidavits presented to the magistrate, when read in a positive light, contain sufficient information to allow a probable cause determination that evidence of criminal conduct would be found in historical cell site location records for James Simmons's cellular telephone for June 21, 2012.

C.    Severability of the Search Warrant

[¶23]  The remaining issue arises from the State's election not to challenge the order suppressing evidence of James Simmons's cell phone records other than those records that provide historical cell site location information for June 21.  In effect, the State has confessed error concerning portions of the warrants, which the court later determined were issued improperly.  We therefore must consider whether the unconstitutional portions of the warrants fatally taint the portions of the warrants that survive scrutiny.  Although the trial court did not reach this issue

because of its comprehensive order of suppression, we consider the severability of a warrant as a question of law. *See Cote*, 2015 ME 78, ¶ 9, 118 A.3d 805; *see also United States v. Soussi*, 29 F.3d 565, 568 (10th Cir. 1994) (stating that appellate review of the severability of a warrant is a determination of law that is reviewed de novo).

[¶24] When a search warrant is wholly unconstitutional or otherwise invalid, total suppression of the evidence seized is generally the appropriate remedy. *See United States v. Sells*, 463 F.3d 1148, 1154 (10th Cir. 2006); *State v. Drown*, 2007 ME 142, ¶ 7, 937 A.2d 157 ("Pursuant to the exclusionary rule, evidence obtained in violation of a defendant's right to be free from unreasonable searches and seizures must be excluded at trial."). As is recognized by the "weight of authority," however, if only portions of a search warrant are unsupported, a court may sever those portions of the warrant from the properly issued portions, thereby ordering partial suppression. *United States v. Riggs*, 690 F.2d 298, 300-01 (1st Cir. 1982) (stating that "virtually every state court" has adopted the remedy of partial suppression); *see also United States v. Sears*, 411 F.3d 1124, 1129 (9th Cir. 2005). As one commentator has explained, "it would be harsh medicine indeed if a warrant issued on probable cause and particularly describing certain items were to be invalidated in toto merely because the affiant and magistrate erred in seeking and permitting a search for other items as well." 2 Wayne R. LaFave et al.,

14

*Search and Seizure: A Treatise on the Fourth Amendment*, § 4.6(f) at 815 (5th ed. 2012).

[¶25]   As a predicate to the partial suppression of evidence, the constitutional aspects of the warrant must be readily identifiable and distinguishable from the unsupported portions of the warrant, *see United States v. Spilotro*, 800 F.2d 959, 967-68 (9th Cir. 1986), so that the former are "textually severable," *id.* at 968.   Additionally, if the proper scope of the warrant is "relatively insignificant" in proportion to the invalidated portions, severance may not be warranted.  *Sears*, 411 F.3d at 1130 (quotation marks omitted).

[¶26]  Here, although the relative quantities of admissible and suppressed evidence cannot be determined meaningfully from the record, the valid portion of the search warrants, which authorizes the seizure of historical cell site location data for June 21, is sufficiently particularized and readily distinguishable from the portions of the warrant that the court properly suppressed.  *See Spilotro*, 800 F.2d at 967.  This weighs significantly in favor of severance.

[¶27]  Further, when it sought the warrants, the State made a showing that likely exceeded what was necessary under applicable law.  Pursuant to the Stored Wire and Electronic Communications and Transactional Records Access Act (SCA), *see* 18 U.S.C.S. §§ 2701-2712 (LEXIS through Pub. L. No. 114-183), the State may well have been entitled to obtain the same noncontent information at

issue here, but with a lesser showing than is required by the conventional warrant process, which the State chose to invoke. *See id.* § 2703(c)(1)(A)-(B), (d). Pursuant to the SCA, in order to seize noncontent records such as historical cell site location data, a governmental entity must demonstrate either probable cause for a warrant, *id.* § 2703(c)(1)(A), *or* "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation" for a court order, *id.* § 2703(d). *See United States v. Graham*, No. 12-4659, No. 12-4825, 2016 U.S. App. LEXIS 9797, at *7 (4th Cir. May 31, 2016) (en banc). A showing, based on "specific and articulable facts," that the requested records are "relevant and material" is less than the showing needed to meet the probable cause standard. *Graham*, 2016 U.S. App. LEXIS 9797 at *13-*14 (holding that a governmental entity's acquisition of historical cell site location information from a defendant's cell phone provider pursuant to section 2703(d) orders does not violate the Fourth Amendment and stating that "every other federal appellate court" and "the vast majority of federal district court judges" have come to the same conclusion); *see In re Application of the United States for Historical Cell Site Data*, 724 F.3d at 608-15 (holding that in contrast to content and tracking information, historical cell site information contained in a carrier's business records does not give rise to full Fourth

Amendment protections to the caller); *In re Application of the United States for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to the Gov't*, 620 F.3d 304, 313 (3d Cir. 2010).

[¶28]  Here, because the State sought a warrant based on a probable cause standard, it assumed a greater burden than was required pursuant to the SCA, and in doing so, the State—by inadvertence or otherwise—triggered a process that likely gave Simmons a greater level of protection than might have been available to him had the State sought a court order pursuant to section 2703(d) of the SCA.

[¶29]  The purpose of the exclusionary rule is to deter police misconduct and prevent the State from benefitting from that misconduct by foreclosing the State's opportunity to use illegally obtained evidence against the accused at trial.  *State v. Bailey*, 2012 ME 55, ¶ 16, 41 A.3d 535.  Here, the State made a probable cause showing to obtain warrants allowing the seizure of historical cell site location data for June 21.  Although a component of the warrant was not supported by probable cause, the State's invocation of a warrant application process that was favorable to James Simmons is a factor that diminishes the justification to impose a remedy designed to discourage malfeasance.  Perhaps more importantly, the lawful portions of the warrant are readily severable from the rest, allowing the court to identify what evidence can be appropriately used at trial and what evidence the State cannot use because of the excessive scope of the warrant.

[¶30] In light of the established principle that favors severance and the suitability of severance in the circumstances of this case, we conclude that evidence of historical cell site location data obtained pursuant to the warrants for James Simmons's June 21 cell phone records may be properly severed from the unconstitutionally broad aspects of the warrants. The evidence that the State obtained properly is therefore not subject to suppression.

## III. CONCLUSION

[¶31] We recognize the tension between Fourth Amendment protections and modern technological developments that affect and often intrude into privacy rights, *see Kyllo v. United States*, 533 U.S. 27, 33-34 (2001), as well as the evolving nature of the law in the present context, *see In re Application of the United States for Historical Cell Site Data*, 724 F.3d at 614. Our holding today applies only to warrants authorizing the seizure of a limited category of business records of past events and does not extend to other types of information that create greater levels of intrusion into personal privacy, such as contemporaneous tracking data and communications content. Here, the State presented sufficient information for a magistrate to make a probable cause determination allowing the seizure of records of historical cell site location data for James Simmons's cellular telephone for June 21, 2012. That evidence was seized without injury to James Simmons's

constitutional rights and is admissible, even though other portions of the warrant were issued improperly.

The entry is:

> That portion of the order suppressing evidence of historical cell site location data contained in James Simmons's cell phone records for June 21, 2012, is vacated. The suppression order is affirmed in all other respects. The case is remanded for further proceedings.

---

**On the briefs and at oral argument:**

Katie R. Hollstrom, Asst. Dist. Atty., District Attorney's Office, Wiscasset, for appellant State of Maine

Steven C. Peterson, Esq., West Rockport, for appellee James R. Simmons

Peter E. Rodway, Esq., Rodway & Horodyski, P.A., Portland, for appellee Frederick A. Campbell

Lincoln County Superior Court docket numbers CR-2014-171 and CR-2014-172
FOR CLERK REFERENCE ONLY