MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:        2022 ME 59
Docket:          Ken-21-328
Argued:          July 6, 2022
Decided:         December 6, 2022

Panel:           STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.

## STATE OF MAINE

v.

## JARED D. JANDREAU

HORTON, J.

[¶1]  Jared D. Jandreau appeals from a judgment convicting him of seventeen counts of sexual exploitation of a minor under the age of twelve (Class A), 17-A M.R.S. § 282(1)(C) (2022), five counts of unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(E-1) (2022), and one count of solicitation to commit gross sexual assault (Class B), 17-A M.R.S. § 253(1)(C) (2022); *see* 17-A M.R.S. § 153(1)(B) (2022), entered by the trial court (Kennebec County, *Stokes, J.*) after a jury trial.  Jandreau raises several arguments on appeal: that (1) a search of his smartphone[1] authorized by a

---

[1] The term "smartphone" is defined as "a cellular phone equipped with various additional features and services, as text messaging, information storage, and internet access."  *Smartphone*, Webster's New World College Dictionary (5th ed. 2016).  The broader term "cell phone," used at times in this opinion, encompasses both smartphones and other phones that provide service through cellular networks but that do not include the additional features of smartphones.  *See Cell Phone*, Webster's

2

warrant violated his Fourth Amendment rights because the warrant was unconstitutionally broad and lacked particularity;[2] (2) the court violated his constitutional right to a public trial; (3) the court erred in admitting an exhibit because it violated the best evidence rule, M.R. Evid. 1002; and (4) several aspects of his sentence were illegal or improper. Of Jandreau's four contentions, only the first merits extended discussion.[3] We affirm Jandreau's conviction.

New World College Dictionary (5th ed. 2016)("[A] kind of mobile radio telephone used in a cellular communications system.").

[2] "Although related, overbreadth and lack of particularity are distinct legal concepts. Overbreadth is present when probable cause is absent as to some or all of the items targeted for seizure. Particularity pertains to the requirement that a warrant be sufficiently particularized on its face to provide the necessary guidelines for the search by the executing officers." *United States v. Redzepagic*, No. 17-CR-228 (DRH), 2020 U.S. Dist. LEXIS 160241, 2020 WL 5232066, at *22 n.4 (E.D.N.Y. Sept. 2, 2020) (citation and quotation marks omitted).

[3] Jandreau's other three arguments lack merit and call for only summary consideration.

First, he claims that the court violated his right to a public trial during jury selection by closing the courtroom to a member of the public. *See Roberts v. State*, 2014 ME 125, ¶ 19, 103 A.3d 1031 ("The Sixth Amendment's public trial guarantee is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." (quotation marks omitted)). However, Jandreau's claim fails based on the undisputed facts. The one member of the public who Jandreau claims was excluded from the courtroom was not an "interested spectator" but a defendant in another criminal case scheduled for jury selection who told a judicial marshal that he had come into the courtroom to locate his lawyer. His lawyer was not in the courtroom. The marshal told the man that he would locate the lawyer and bring the lawyer to him and asked the man to wait in the hall, where he and his lawyer could have a private conversation. The man readily complied without any objection or other indication that he wished to remain. No door to the courtroom was locked, no "interested spectator" was excluded, and no violation of Jandreau's rights occurred.

Second, Jandreau's argument asserting the best evidence rule is based on the court's admission of several hundred text messages that the evidence indicated Jandreau had deleted from his cell phone,

# I. BACKGROUND

[¶2]  Viewed in the light most favorable to the trial court's order denying Jandreau's motion to suppress, the record supports the following facts. *See State v. Sasso*, 2016 ME 95, ¶¶ 2, 19, 143 A.3d 124 (explaining that when neither party moves for further findings of fact in the context of a motion to suppress, we "infer that the court found all the facts necessary to support its judgment if those inferred findings are supportable by evidence in the record." (quotation marks omitted)).

---

some of which had contained emojis that did not appear in the admitted text messages because the State's data extraction program could not reproduce emojis.  "An original writing . . . is required in order to prove its content unless [the Maine Rules of Evidence] or a statute provides otherwise." M.R. Evid. 1002.  Rule 1004(a), however, permits other evidence of the content of a writing to be admitted in place of the original if "[a]ll the originals are lost or destroyed, and not by the proponent acting in bad faith."  M.R. Evid. 1004(a).  "We review the court's application of the best evidence rule for an abuse of discretion."  *State v. Legassie*, 2017 ME 202, ¶ 29, 171 A.3d 589.  Here, because Jandreau, not the State, had deleted the original text messages, the court did not abuse its discretion in granting the State's request to admit the messages without emojis as the best available evidence of their content.

Finally, Jandreau objects to his sentence on several grounds, including that the sentence imposed constitutes an unconstitutional penalty for his exercise of his right to trial.  He points to the difference between the sentence he was offered during plea negotiations and the sentence imposed after trial and also to the difference between his sentence and the more lenient sentence another participant in the same criminal activity received after pleading guilty.  The imposition of a sentence after trial that is greater than the one offered during plea negotiations, however, does not necessarily infringe upon a defendant's right to require the State to prove its allegations at trial.  "It is to be expected that, on the whole, defendants who plead guilty to criminal offenses receive more lenient sentences than defendants who go to trial. . . . Remorse and acceptance of responsibility are factors to look at in sentencing, and defendants who plead guilty are more likely to demonstrate sincere remorse than defendants who do not plead guilty."  *State v. Winslow*, 2007 ME 124, ¶ 31, 930 A.2d 1080 (citations omitted).  This and Jandreau's other objections to his sentence and probation conditions do not merit further discussion.

4

[¶3]  A woman told police on August 29, 2017, that Jandreau had sexually assaulted her earlier that day.  The police arrested Jandreau on August 30 and seized his Samsung Galaxy S8 smartphone.  On September 8, 2017, the police applied for a warrant to search the cell phone.  The affidavit supporting the warrant request included, in pertinent part, the following supporting information:

- The alleged victim of the sexual assault said that she had met Jandreau on match.com.

- The alleged victim said that she had met Jandreau in person once prior to August 29, 2017.

- The alleged victim said that she had spoken to Jandreau once over the phone but that their primary means of communication was via text message.

- The alleged victim showed the officers text messages between her and Jandreau, none of which was sexual in nature.

- The alleged victim said that after she arrived at Jandreau's home on August 29, 2017, he repeatedly and violently assaulted her and forced her to engage in sexual acts.

- When police spoke to Jandreau in the early morning of August 30, 2017, Jandreau initially denied knowing the alleged victim, but later stated that he "had sex with [her]," that "she came over looking for sex," and that the alleged victim had sent him text messages "repeatedly asking him to have sex with her."

[¶4]  The same day, the court issued a warrant permitting a search of Jandreau's cell phone for the following:

Any files, documents, or software related to the crime of Gross Sexual [Assault], including but not limited to text messages, phone numbers, photographs, videos, emails, and contact information including but not limited to [the alleged victim].

Records in any form regarding searches for information regarding sexual assaults.

Communication in any form regarding sexual assault and/or [the alleged victim.]

Communication in any form between [the alleged victim] and Jandreau[.]

Records, images, videos and recording in any form regarding sexual assaults or [the alleged victim].

[¶5]  After the warrant was issued, the police electronically extracted the cell phone's data and returned the cell phone to Jandreau in November 2017. In December 2017, a prosecutor reviewed the extracted material and found two images of a child, one of which he believed constituted child pornography.

[¶6]  The prosecutor reported the images to the Maine State Police.  In January 2018, a state police detective sought and obtained an additional warrant to search Jandreau's home and property for any electronic devices. When the detective executed the January 2018 warrant, Jandreau voluntarily gave the police access to the contents of his cell phone.  The subsequent search of the cell phone did not uncover any sexually explicit depictions of minors.

[¶7]  The detective then sought and obtained another warrant to reaccess the data that had been extracted pursuant to the September 2017 warrant. Upon execution of that warrant, police discovered additional photos and a video that were sexually explicit and depicted the same child as the photos identified by the prosecutor in December 2017.

[¶8]  On January 24, 2020, the State charged Jandreau by indictment with twenty counts of sexual exploitation of a minor under the age of twelve, five counts of unlawful sexual contact, and one count of solicitation to commit gross sexual assault.[4]  Jandreau filed a motion to suppress evidence, a motion to dismiss, and a second motion to suppress that included a request for a *Franks* hearing.[5]  The court held a pre-*Franks* hearing on April 5, 2021, related to the September 2017 warrant, and then denied the request for a *Franks* hearing. The court (*Cole, A.R.J.*) then held a hearing on both the motion to suppress and the motion to dismiss on May 28, 2021.  The testimony presented at the hearing

---

[4]  The State also brought charges against the mother of the child depicted in the photos and video on Jandreau's smartphone.  The mother of the child is not the alleged victim of the August 29, 2017, assault.  No charges were brought against Jandreau regarding the reported assault that gave rise to the September 2017 warrant.

[5]  A *Franks* hearing is an evidentiary hearing at which a defendant may challenge the truthfulness of statements made in an affidavit to support a search warrant.  *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).  To determine whether to convene a *Franks* hearing, the court may hold a pre-*Franks* hearing at which a defendant must make "a substantial preliminary showing that: (1) the affidavit to obtain a warrant included intentional and knowing misstatements or misstatements made in reckless disregard for the truth, and (2) that the misstatements were necessary for a finding of probable cause."  *State v. Hamel*, 634 A.2d 1272, 1273 (Me. 1993).

focused solely on the execution of the January 2018 search warrant, although the September 2017 search warrant and supporting affidavit were also admitted as exhibits. The court denied the motions to suppress and dismiss in a written order, determining that Jandreau had consented to the January 2018 search of his smartphone:

> [Jandreau]'s arguments focus on his cell phone, which would not have any bearing on the first warrant issued in his [Gross Sexual Assault] [(GSA)] case, which sought only evidence of GSA and DNA in his home.
>
> [Jandreau]'s arguments as to the warrants fail because he consented to the search. . . . The evidence [Jandreau] seeks to suppress are the files police found on his cell phone. The recording of [Jandreau]'s conversation with Detective Armstrong satisfies the court that [Jandreau] freely and voluntarily gave police the password to his phone when asked, manifesting consent to a search of the phone's contents.

[¶9]  The court's finding of consent plainly applies only to the execution of the January 2018 warrant, and the court's order did not address the validity of the September 2017 warrant specifically. However, in a footnote referring to Jandreau's overbreadth argument as to the four warrants generally, the court's order stated:

> [Jandreau]'s motion also argues that the police exceeded the scope of the warrants, that the searches were unreasonable in light of the privacy implications of searching a cell phone, that the warrants did not establish that the defendant was committing a crime, that the warrants failed to establish a nexus between the place searched

and the crime allegedly committed and that the warrants failed the inventory requirement of the Maine Rules of Criminal Procedure. These arguments are advanced in a conclusory manner, and [the] defendant does not connect the facts of this case to these arguments to explain why they should result in suppression of evidence. The court will therefore disregard these arguments and direct its attention to the arguments which were fully briefed.

[¶10] The court (*Stokes, J.*) held a four-day jury trial between July 19 and 22, 2021. During the trial, Jandreau moved to suppress evidence of text messages exchanged between Jandreau and the mother of the child depicted in the photos and video. The court denied his motion. The State's evidence that was subsequently admitted included sexually explicit photos of the child, a sexually explicit video of the child, and the text messages between Jandreau and the mother of the child depicted in the photos and video. The jury returned a verdict of guilty on all charges that went to trial.[6]

[¶11] After holding a sentencing hearing, the court entered a judgment on the verdict and sentenced Jandreau on one of the counts of sexual exploitation of a minor to eighteen years of incarceration with all but ten years suspended and ten years of probation. For the remaining counts, the court imposed sentences concurrent to the sentence for sexual exploitation of a minor. Jandreau timely appealed. *See* 15 M.R.S. § 2115 (2022); M.R. App. P.

---

[6] The State dismissed three counts of the indictment before trial.

2B(b)(1). Jandreau also timely filed an application for leave to appeal his sentence, which the Sentence Review Panel granted. *See* 15 M.R.S. § 2151 (2022); M.R. App. P. 2B(b)(1), 20(b).

## II. DISCUSSION

[¶12] On appeal, Jandreau contends that the court erred in declining to reach his argument that the September 2017 warrant was overbroad and violated the Fourth Amendment's[7] particularity requirement and maintains that the court should have granted his motion to suppress. The scope of our review of the denial of a motion to suppress is limited to the record upon which the court decided the motion. *See State v. Tribou*, 488 A.2d 472, 475 (Me. 1985) ("Only evidence presented to the motion Justice is considered in deciding whether the record supports the motion Justice's determination.").[8]

[¶13] Our analysis begins with an overview of the law regarding warrants.

---

[7] Because Jandreau relies on only the Fourth Amendment of the United States Constitution, we do not address whether the warrants and searches comported with the Maine Constitution. *See State v. Chan*, 2020 ME 91, ¶ 18 n.10, 236 A.3d 471.

[8] When a motion to suppress is renewed at trial, our review extends to include the record developed on the renewed motion. *See State v. Annis*, 2018 ME 15, ¶ 16 n.3, 178 A.3d 467 ("Our review . . . is limited to the record before the suppression court at the time of its order . . . ."). Although motions to suppress are to be filed on "the next court day following the dispositional conference," M.R.U. Crim. P. 12(b)(3)(A), they may be renewed or even initiated after that point for good cause. *See* M.R.U. Crim. P. 41A(b) ("For good cause shown, the court may entertain [a motion to suppress] at a time beyond that provided in Rule 12(b)(3).").

## A.    Legal Overview

[¶14]  The Fourth Amendment protects against unreasonable searches and seizures and provides that warrants must be based on probable cause and must "particularly describ[e] the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  "[T]he central concern underlying the Fourth Amendment [is] the concern about giving police officers unbridled discretion to rummage at will among a person's private effects." *Arizona v. Gant*, 556 U.S. 332, 345 (2009).  As the United States Supreme Court has explained,

> [t]he manifest purpose of this particularity requirement was to prevent general searches.  By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.  Thus, the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found.  Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase.

*Maryland v. Garrison*, 480 U.S. 79, 84-85 (1987) (quotation marks and footnote omitted).

[¶15]   We review with deference a judicial officer's determination of probable cause supporting the issuance of a search warrant.  *See State v. Nunez*, 2016 ME 185, ¶¶ 18, 30, 153 A.3d 84.  What particular things and locations a warrant may authorize to be searched based on probable cause is a fact-intensive inquiry that must be resolved based on the unique circumstances in each case, including the information in the affidavit and the nature of the alleged crime.  *See, e.g.*, *Commonwealth v. Snow*, 160 N.E.3d 277, 288 (Mass. 2021); *United States v. Rarick*, 636 F. App'x 911, 914 (6th Cir. 2016).[9]  However, whether a search warrant satisfies the constitutional particularity requirement is ultimately a question of law that we determine de novo.  *See State v. Lehman*, 1999 ME 124, ¶ 7, 736 A.2d 256.

---

[9] Probable cause and particularity cannot be separated entirely for purposes of review because a search warrant is particular if probable cause exists to search the places listed in the warrant. *See State v. Samson*, 2007 ME 33, ¶ 13, 916 A.2d 977 ("A warrant authorizing a search of more than one building will not fail for lack of particularity of location if the affidavit sets forth probable cause to search each location.").  Accordingly, although a challenge to a search warrant based on lack of particularity is distinct from a challenge based on lack of probable cause, in addressing the particularity of a search warrant, courts often consider the scope of probable cause shown. *See, e.g.*, *Burns v. United States*, 235 A.3d 758, 773 (D.C. 2020); *Commonwealth v. Johnson*, 240 A.3d 575, 586 (Pa. 2020) ("[I]t is impossible to consider an overbreadth challenge to a search warrant without taking probable cause into account."); *United States v. Griffith*, 867 F.3d 1265, 1275-76 (D.C. Cir. 2017) ("[T]he requirement of particularity is closely tied to the requirement of probable cause.  When a warrant describes the objects of the search in unduly general terms, it raises the possibility that there does not exist a showing of probable cause to justify a search for them." (quotation marks and citation omitted)); 2 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 4.5 (6th ed.), Westlaw (database updated Dec. 2021) ("[T]he requirement of particularity is related to the probable cause requirement, in that—at least under some circumstances—the lack of a more specific description will make it apparent that there has not been a sufficient showing to the magistrate that the described items are to be found in a particular place.").

12

[¶16]   Although courts generally apply traditional Fourth Amendment principles when considering searches of computers and cell phones, searches of these objects present unique concerns.  *See, e.g.*, *Riley v. California*, 573 U.S. 373, 393-98 (2014); *Commonwealth v. Dorelas*, 43 N.E.3d 306, 312 (Mass. 2016).

[¶17]   Neither we nor the United States Supreme Court have considered the particularity requirement in the context of warrants to search cell phones, although we have addressed the requirement in the context of searches of computers and data from cell phone providers.  *See, e.g.*, *State v. Warner*, 2019 ME 140, 216 A.3d 22.

[¶18]   The United States Supreme Court applied the Fourth Amendment to cell phone searches in *Riley v. California*, where the Court held that, absent extenuating circumstances, police cannot search the contents of a smartphone incident to lawful arrest without first obtaining a warrant.  573 U.S. at 403.  The Court expounded the reasons that cell phones are distinct from other objects in the context of the Fourth Amendment:

> The storage capacity of cell phones has several interrelated consequences for privacy.  First, a cell phone collects in one place many distinct types of information—an address, a note, a prescription, a bank statement, a video—that reveal much more in combination than any isolated record.  Second, a cell phone's capacity allows even just one type of information to convey far

more than previously possible.  The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions . . . Third, the data on a phone can date back to the purchase of the phone, or even earlier. . . .

. . . .

Although the data stored on a cell phone is distinguished from physical records by quantity alone, certain types of data are also qualitatively different.  An Internet search and browsing history, for example, . . . could reveal an individual's private interests or concerns . . . Data on a cell phone can also reveal where a person has been.  Historic location information is a standard feature on many smart phones and can reconstruct someone's specific movements down to the minute, not only around town but also within a particular building.

. . . .

. . . [A] cell phone search would typically expose to the government far more than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form . . . .

*Id.* at 394-97 (citations and emphasis omitted).  With this detailed explanation, the Court underscored the significant Fourth Amendment concerns presented by cell phone searches.  *Id.*  *Riley*'s utility for present purposes ends here, however, because the Court simply held that police must obtain a warrant to search the cell phone and did not further explain the meaning of the particularity requirement in the context of warrants to search cell phones. *Id.* at 403.

[¶19]   In a 2019 opinion, in upholding the validity of a search warrant aimed at obtaining phone data, not from the cell phone itself but from a wireless provider, we echoed concerns about searches of cell phones given the breadth of information contained on cell phones:

> The warrant at issue sought specifically identified aspects of Warner's cell phone records, covering a defined period, from the wireless provider. The detective did not seek—and the court did not issue a warrant for—the seizure of Warner's cell phone itself. As the Supreme Court [in *Riley*] has explained, a cell phone provides a wide-open window into a person's life. "Cell phones . . . place vast quantities of personal information literally in the hands of individuals." "[M]any of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate."
>
>     The extraordinary breadth and sensitivity of information that people may store on their cell phones creates a qualitatively different factual context in which to consider the constitutionality of a warrant to search an entire cell phone, compared to the factual context for the warrant issued in this case, where the information sought from the wireless service provider was much more circumscribed.

*Warner*, 2019 ME 140, ¶¶ 27-28, 216 A.3d 22 (citing *Riley*, 573 U.S. at 386, 395).

[¶20]   In noting that the warrant we upheld in *Warner* was limited to "specifically identified aspects of Warner's cell phone records, covering a defined period," we plainly endorsed the principle that a warrant authorizing a search of cell phone information, even in the form of provider records, should

be defined by the showing of probable cause made in the affidavit supporting the warrant request. *Warner*, 2019 ME 140, ¶ 27, 216 A.3d 22.

[¶21]   Other courts have reached and discussed overbreadth and particularity in the context of search warrants for cell phones, reaching varying outcomes. *Compare Burns v. United States*, 235 A.3d 758, 773-74 (D.C. 2020), *with United States v. Bishop*, 910 F.3d 335, 337-38 (7th Cir. 2018).

## B.   Jandreau's Overbreadth and Particularity Argument in the Trial Court

[¶22]  "An issue is raised and preserved if there was a sufficient basis in the record to alert the court and any opposing party to the existence of that issue." *Warren Constr. Grp., LLC v. Reis*, 2016 ME 11, ¶ 9, 130 A.3d 969 (quotation marks omitted).  The phrase "raised and preserved" signifies that it is not sufficient for a party to raise an issue in the trial court if the issue is not preserved.  In his brief, Jandreau contends that "defense counsel raised the [particularity and overbreadth] argument in the motion to suppress, at the suppression hearing, and again at trial."

[¶23] Jandreau's written motion to suppress included a section on what he asserted to be the overbreadth and lack of particularity of all four of the search warrants issued.  However, the motion did not differentiate among the four warrants, did not quote or refer to any specific portion of any of the

warrants, and did not link its boilerplate recitations of law and citations to cases to any specific portion of any of the four warrants or affidavits. The fact that the September 2017 warrant authorizes a search of Jandreau's cell phone for five separate categories of records and materials renders problematic Jandreau's failure to discuss in his written motion any specific provision or category. When a search warrant contains multiple provisions, each authorizing a separately defined search, our jurisprudence calls for examining the validity of each provision, because a valid authorization to search that is severable from an overbroad, insufficiently particular, or otherwise invalid authorization may be upheld. *See State v. Roy*, 2019 ME 16, ¶¶ 27-28, 201 A.3d 609; *State v. Simmons*, 2016 ME 103, ¶¶ 24-25, 143 A.3d 819. *See also United States v. Richards*, 659 F.3d 527, 537 (6th Cir. 2011) ("Infirmity due to overbreadth does not doom the entire warrant; rather, it requires the suppression of evidence seized pursuant to that part of the warrant, but does not require the suppression of anything described in the valid portions of the warrant." (quotation marks and alterations omitted)). The court's characterization of Jandreau's written overbreadth and particularity arguments as "conclusory" is appropriate.

[¶24] At the outset of the motion hearing, the State asked Jandreau to outline the grounds within his multifarious motion to suppress that he actually intended to press. Jandreau identified the issue to be explored at the evidentiary hearing as being that Jandreau did not consent to the search of his cell phone that occurred after the police seized it for the second time, in January 2018. He also mentioned what he called "four corners arguments," but did not identify which warrant or warrants those arguments related to and did not indicate that they involved any factual issues that would require the presentation of evidence. Accordingly, the only testimony presented at the suppression hearing related to the execution of the January 2018 search warrant.

[¶25] After the presentation of evidence, Jandreau and the State presented closing arguments on the motion. During Jandreau's closing, he made a passing reference to the September 2017 warrant at issue in this appeal as having allowed an overbroad search of Jandreau's cell phone, but he did not identify any particular warrant provisions as being overbroad and did not relate the facts set forth in the affidavit to the scope of the search. In sum, both Jandreau's motion and the motion-hearing record support the motion court's ruling that Jandreau did not effectively raise and preserve the issues of

overbreadth and lack of particularity with respect to the September 2017 warrant.

[¶26]   Jandreau's motion during trial did nothing to clarify matters because the renewed motion did not relate to any overbreadth or lack of particularity in the September 2017 warrant.  The motion sought the exclusion of an exhibit containing 343 text messages between Jandreau and the mother of the child on the ground that the exhibit failed to reproduce emojis that had been part of the original text messages.  The trial court's admission of the exhibit was the subject of Jandreau's argument to us on the best evidence rule and did not involve the September 2017 warrant.

[¶27]   We conclude that the motion court correctly determined that Jandreau's arguments regarding overbreadth and lack of particularity in the September 2017 warrant were raised perfunctorily but never developed.  Despite the trial court's clear decision to "disregard these arguments" for purposes of Jandreau's motion, Jandreau did not seek to revisit the issues or otherwise rectify the deficiency at any time in the trial court.  We conclude that

the issues of lack of particularity and overbreadth in the September 2017 warrant were abandoned, and we do not address them further.[10]

The entry is:

Judgment affirmed.

---

Rory A. McNamara, Esq. (orally), Drake Law LLC, York, for appellant Jared D. Jandreau

Aaron M. Frey, Attorney General, and Paul Rucha, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Kennebec County Unified Criminal Docket docket number CR-2020-119
FOR CLERK REFERENCE ONLY

---

[10] Jandreau's brief on appeal does not contend that, if we affirm the trial court's refusal to consider Jandreau's particularity and overbreadth arguments, we should nonetheless review for obvious error. Assuming, without deciding, that such review is nonetheless appropriate when a suppression argument that was not developed and therefore not considered in the trial court is raised in a direct appeal, after a review of the entire record we conclude that the denial of Jandreau's motion was proper and did not constitute obvious error.