MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2025 ME 21
Docket:        Han-24-65
Argued:        November 13, 2024
Decided:       February 25, 2025

Panel:         STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

## STATE OF MAINE

v.

## RAYMOND N. LESTER

CONNORS, J.

[¶1]  Raymond N. Lester appeals from a judgment of conviction of intentional or knowing murder, 17-A M.R.S. § 201(1)(A) (2024), entered by the trial court (Hancock County, *R. Murray, J.*) after a jury trial, as well as the resulting sentence.  Lester's primary arguments are that (1) the jury instructions on motive, intent, and premeditation improperly highlighted how the State could prove its case; (2) the court committed obvious error by failing to instruct the jury on the defense of intoxication; and (3) the court misapplied legal principles in setting the defendant's basic sentence at forty years.  We affirm both the judgment of conviction and the sentence.

### I.  BACKGROUND

[¶2]  Viewing the evidence in the light most favorable to the State, the

2

jury rationally could have found the following facts beyond a reasonable doubt. *See State v. Athayde*, 2022 ME 41, ¶ 2, 277 A.3d 387.

[¶3]  The victim's body was found on June 19, 2022, at the Schoodic Institute at Acadia National Park during a retreat that she had planned for members of the Maine Black community and that she and her boyfriend, Lester, had attended together.  A witness who attended the retreat testified that she had seen Lester screaming at the victim two days prior to the victim's death. Several retreat participants testified that the evening before the victim's body was found, Lester had been driving recklessly around the area of the retreat, loudly playing violent music from his car and making a gesture with his hand and outstretched arm like he was shooting a gun at them; one participant testified that when he tried to talk to Lester while Lester was in his car, he had seemed drunk, and some participants said that they had seen Lester later that evening drinking directly from a clear bottle of alcohol.  The victim's body was found the next morning on a walking path at the Institute; tire tracks went from the nearby road through trees and bushes up to the spot on the path where the body was found.  The victim died of internal and external trauma caused by several blunt force injuries.

[¶4]  Lester was charged by complaint in June 2022 and indicted in August 2022.  He pleaded not guilty, and a four-day trial was held in early November 2023.  During discussion of the jury instructions, Lester's attorney objected to the court's proposed instructions relating to intent, motive, and premeditation, stating that he believed that they "serve[d] to lessen what the State needs to prove."  When the State responded that the proposed instructions were all legally correct, Lester's attorney replied, "I was not implying that there are any actual inaccuracies.  I think when you look at the instructions in total, I believe that they appear to undermine or lessen the State's burden."  The court rejected Lester's objection, noting, inter alia, that the proposed instructions came directly from "Alexander's manual."[1]

[¶5]  The jury found Lester guilty, and the court held a sentencing hearing in February 2024.  After reviewing the sentences in cases submitted by the State and by defense counsel as relevant comparable cases, the court set the basic sentence at forty years, noting both the domestic violence character of the murder and Lester's intentional conduct "in running [the victim] down with his motor vehicle" "to leave her to die on the side of the pathway" and flee.  After

---

[1] *See* Donald G. Alexander, *Maine Jury Instruction Manual*, §§ 6-38, 6-39, 6-46 (2022 ed. LexisNexis Matthew Bender).

4

weighing several aggravating and mitigating factors, the court finalized Lester's sentence at forty-eight years.

[¶6] Lester timely appealed the conviction and applied to the Sentence Review Panel to allow appeal of his sentence. M.R. App. P. 2B(b)(1); M.R. App. P. 20; 15 M.R.S. §§ 2111(1), 2151 (2024). The Sentence Review Panel granted Lester leave to appeal, and we consolidated the appeals.

## II. DISCUSSION

### A. The court's instructions on motive, intent, and premeditation were legally accurate and were not otherwise erroneous.

[¶7] Lester argues that "[t]he trial court erred by singling out for special attention how the State may prove intent and the fact that the State need not prove motive or premeditation."[2] He claims that these instructions, quoted and

---

[2] On appeal, as before the trial court, Lester concedes that the court's instructions on intent and motive were legally correct. He claims on appeal, however, that the court's instruction on premeditation was incorrect because it "bar[red]" or "seriously dissuade[d]" jurors from concluding that "*the lack of* evidence of premeditation [could] bear[] on whether [Lester] harbored the requisite *mentes reae*." Because Lester not only raises this argument for the first time on appeal but also had affirmatively told the trial court that the instruction was accurate, we deem this argument waived. *See Foster v. Oral Surgery Assocs., P.A.*, 2008 ME 21, ¶ 22, 940 A.2d 1102 ("An issue raised for the first time on appeal is not properly preserved for appellate review.") Even if it were not waived, we would find no obvious error for reasons similar to those discussed *infra*: the instruction is legally correct—the State need not prove premeditation, *State v. Lafferty*, 309 A.2d 647, 664-65 (Me. 1973)—and the instructions, viewed holistically, were not unfairly weighed in favor of the State. *See* M.R.U. Crim. P. 52(b); *State v. Pabon*, 2011 ME 100, ¶ 18, 28 A.3d 1147 ("Where no party objects to an alleged error at trial, obvious errors or defects affecting substantial rights may still be addressed on appeal." (alteration and quotation marks omitted)).

discussed below, were collectively prejudicial because they "repeated[ly] highlight[ed] . . . the State's ability to prove the requisite mental state."

[¶8] Regarding intent, the court instructed the jury:

> Intent or the mental state ordinarily cannot be proved directly because there is rarely direct evidence of the operation of the human mind. But you may infer a person's intent or state of mind from the surrounding circumstances. You may consider any statement made and any act done or omitted by the person and all other facts in evidence which indicate state of mind. You may consider it reasonable to infer and find that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is entirely up to you to decide what facts to find from the evidence.

Lester argues that the first sentence of this instruction "primed jurors to expect less than they otherwise might have" as proof that Lester harbored the requisite mental state for a murder conviction. He adds that "[t]he rest of the court's instruction about mental states highlighted the numerous ways the State might prove the mental-state element" and thus "help[ed] the State lift its burden."

[¶9] Regarding premeditation, the court instructed the jury:

> The State does not have to prove that Mr. Lester acted with premeditation, that is, with planning or deliberation, to establish that his conduct was intentional. Rather, the intent to cause death may arise in the instant before the death producing conduct. However, you may consider any evidence of premeditation, if you find such exists, as it bears upon whether Mr. Lester acted intentionally.

6

Lester argues that this instruction "highlight[ed] the State's case" and improperly "dr[ew] attention to the proveability [*sic*] of the State's case."

[¶10]  Regarding motive, the court instructed the jury:

> The State also does not have to prove motive, that is, the reason or reasons why a person acted as he or she did.  Absence of motive does not necessarily raise a reasonable doubt respecting the guilt of an accused.  Nor does the mere fact that it exists establish guilt.  Instead[,] evidence of the presence or absence of motive is a matter for you to consider along with all other facts and circumstances in evidence in determining whether the State has met its burden of proving beyond a reasonable doubt the crime charged.

Lester objects to the court "explaining to the jury how the State can prove its case."

[¶11]  Because Lester preserved the objection that these jury instructions weighed too heavily in favor of the State,[3] our task on appeal is to review the instructions "as a whole for prejudicial error, and to ensure that they informed the jury correctly and fairly in all necessary respects of the governing law."

---

[3]  Lester's argument was not phrased the same way before the trial court as it is before us.  Before the trial court, Lester argued that the instructions lessened the State's burden, while before us, Lester argues that the instructions inappropriately highlighted how the State could prove its case.  The State argues that, given this difference, we should review the instructions only for obvious error.  We instead treat Lester's argument as preserved because the general contours of the argument as framed before us were presented to the trial court.  *See State v. Jandreau*, 2022 ME 59, ¶ 22, 288 A.3d 371 ("An issue is raised and preserved if there was a sufficient basis in the record to alert the court and any opposing party to the existence of that issue." (quotation marks omitted)).  The gist of Lester's argument at trial was that, although accurate, the instructions were improperly favorable to the State; this is also the general thrust of his argument on appeal.

*State v. Hanscom*, 2016 ME 184, ¶ 10, 152 A.3d 632 (quotation marks omitted). "Prejudice occurs when an erroneous instruction on a particular point of law affects the jury's verdict, or alternatively, when the instruction was so plainly wrong and the point involved so vital that the verdict must have been based upon a misconception of the law." *State v. Hansley*, 2019 ME 35, ¶ 8, 203 A.3d 827 (quotation marks omitted). "The appellant has the burden of demonstrating that an erroneous instruction affected the jury's verdict." *Id.*

[¶12] Best practice is for judges either to avoid speaking to one party's case or to balance their instructions by referring to both parties' cases equally. For example, in instructing the jury on motive in a murder case, a trial court might, as was done here, explain that proof of motive is not necessary for the jury to find guilt but that lack of proof of motive may lend support to a reasonable doubt as to guilt. Our decision in *State v. Barry*, 495 A.2d 825, 827 (Me. 1985), while not squarely on point, touches generally upon this principle. There, we disapproved of an instruction that "unnecessarily single[d] out the accused for a reiteration of the standards for evaluating his testimony" because it "carrie[d] some risk of infringing upon the exclusive factfinding province of the jury, and of making a defendant less likely to exercise his constitutional right to testify." *Id.* We stated:

8

> [C]onsiderations of judicial economy suggest that trial judges should avoid the use of an instruction that adds little, if anything, to the jury's understanding of its task, but risks an appeal in which the Law Court will be required to appraise the net effect of the whole instruction in each particular case. For those reasons, although such an instruction when read in its complete context may well survive attack in most instances, it should be avoided in favor of the customary general instruction applicable to all witnesses.

*Id*.

[¶13]  As we noted in *Barry*, our task on appeal is not to review the instructions for best practices, but rather to evaluate the instructions given as a whole. *Id.* Here, however, the instructions complied with best practice. They noted that the burden always remained on the State to prove all the elements of murder, including mens rea, beyond a reasonable doubt. They also did not single out a particular piece of evidence or the motive of a particular witness. Viewed as a whole, we cannot say that the total effect created by all the instructions was unfair or misleading or had the potential to create jury misunderstanding. *See State v. Robbins*, 506 A.2d 1150, 1151 (Me. 1986). Put simply, these instructions sufficiently informed the jury about what the State had to prove as to each element of the offense; therefore, they were not erroneous.

## B. The court did not commit obvious error by omitting an intoxication instruction.

[¶14]  Lester argues that the court should have included an instruction on intoxication because "with the required instruction, [Lester] would have been . . . found guilty of manslaughter" rather than murder.  *See* 17-A M.R.S. § 37 (2024).[4]  Because Lester did not request such an instruction, we review the trial court's instructions under the obvious error standard.[5]  *See State v. Reeves*,

---

[4]  Section 37(1) provides that "evidence of intoxication may raise a reasonable doubt as to the existence of a required culpable state of mind."  17-A M.R.S. § 37(1) (2024).  The principle is that intoxication can negate the defendant's ability to achieve the intentional or knowing state of mind needed to be convicted of a crime.  *See State v. Griffin*, 2017 ME 79, ¶ 12, 159 A.3d 1240.

[5]  The State asserts that this argument, too, was waived, and that it therefore cannot be reviewed at all.  The State contends that "Lester waived the instruction on the defense of intoxication[] by affirmatively arguing that the only inference that could be drawn from his 'drinking and driving' was that he was acting inappropriately, not that he hit anyone accidentally or intentionally, and by not either requesting an instruction on an intoxication defense or objecting to the court's failure to include such an instruction."  The State is arguably correct.  Given the significance of the issue of intoxication to the charges here, it is at least arguable that a defendant seeking to litigate the issue must take affirmative steps to avoid waiver.  *See State v. Gallant*, 2004 ME 67, ¶ 3, 847 A.2d 413 ("Although the State does not have the burden of disproving the existence of the issue of intoxication beyond a reasonable doubt, as it would if the issue of intoxication was a statutory defense, the State must prove, beyond a reasonable doubt, that Gallant acted intentionally or knowingly in causing the victim's death." (citations omitted)); *State v. Foster*, 405 A.2d 726, 729 (Me. 1979) (noting the need to provide an intoxication instruction "[w]here the theory of the defense focuses on the absence of a culpable state of mind in respect to an element of the offense or an essential attendant circumstance because of intoxication" "when requested by the defendant").  At no point did Lester request an intoxication instruction.  He repeatedly agreed to the jury instructions without an intoxication instruction.  He also initially objected to language on the verdict form regarding manslaughter on the ground that "it somewhat seems to lessen what the State needs to prove for murder," suggesting that he was consciously pursuing an all-or-nothing strategy.  Although Lester's attorney referenced Lester's drinking on the night of the victim's death during his closing argument to the jury, his theory of the case emphasized that the State had not shown that Lester's car had struck the victim at all.  In sum, aside from the fact that more than passive omission of a request for an intoxication instruction may be required to obtain review of its omission on appeal, based on this record, Lester's failure to request such an instruction may very well have been strategic and waived on that ground, as well.  *See State v. Nobles*, 2018 ME 26, ¶ 34, 179 A.3d 910 ("If a defendant explicitly waives the delivery of an instruction or makes a strategic or tactical decision not to request it, we will decline to engage in

2022 ME 10, ¶ 35, 268 A.3d 281 ("If an issue is unpreserved, we will review it only for obvious error.")

[¶15]  "For an error or defect to be obvious for purposes of Rule 52(b), there must be (1) an error, (2) that is plain, and (3) that affects substantial rights.  If these conditions are met, we will exercise our discretion to notice an unpreserved error only if we also conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings." *State v. Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147.  "An error affects a criminal defendant's substantial rights if the error was sufficiently prejudicial to have affected the outcome of the proceeding." *State v. Dolloff*, 2012 ME 130, ¶ 37, 58 A.3d 1032 (alteration and quotation marks omitted).  The burden is on the defendant to demonstrate obvious error to this Court. *Id.* ¶ 39.

[¶16]  Here, although evidence was offered at trial indicating that Lester had been drinking the evening before the victim's body was found, there was no evidence that Lester was drunk when he killed the victim.  We have found that "[t]he mere fact that a defendant may have been drinking prior to the commission of the offense charged against him does not establish intoxication." *State v. Smith*, 277 A.2d 481, 492 (Me. 1971).  In *Smith*, we explained:

---

appellate review, even for obvious error.")  In any event, we need not rule on this issue because, as discussed *infra*, the argument fails under the obvious error standard of review.

> [F]or intoxication to constitute a valid defense the evidence must show that the defendant's inebriated condition under the circumstances was so great as to render him incapable of entertaining or formulating the specific intent essential to the crime charged.

*Id.*

[¶17]  Given that there exists this lacuna in the evidence; that throughout the trial, Lester focused on the lack of proof that he hit the victim at all; and that the court properly instructed the jury on the elements of "intentional or knowing murder" and explained that "the State must convince [the jury] beyond a reasonable doubt of each" of the elements of the crime, we cannot say that Lester's substantial rights were adversely affected by the omission of an intoxication instruction such that the court obviously erred by not giving the instruction *sua sponte*.

## C.  The court did not misapply legal principles in setting the defendant's basic sentence at forty years.

[¶18]  The sentence for murder must be for life or for a term of at least 25 years.  17-A M.R.S. § 1603(1) (2024).  In imposing a sentence for murder, the court undertakes a two-step analysis.  17-A M.R.S. § 1602(1)-(2) (2024).  First, the court determines a basic term of imprisonment "by considering the particular nature and seriousness of the offense as committed by the individual."  17-A M.R.S. § 1602(1)(A).  Second, the court determines the

maximum term by considering "all other relevant sentencing factors, both aggravating and mitigating, appropriate to the case," including, for example, the defendant's criminal history. 17-A M.R.S. § 1602(1)(B).

[¶19] In setting the basic sentence here, the court explained that both sides had presented it with murder cases involving domestic violence that the parties argued were comparable to this case; the court also observed that the conduct here involved running the victim down, leaving her to die, and "immediately tak[ing] flight." The court noted that Lester's comparables resulted in sentences of thirty-eight to forty years and the State's ran roughly from forty-five to fifty-five years. After citing these factors, the court weighed them on the continuum on which the crime of murder can be undertaken and arrived at the basic sentence of forty years. *See State v. Nichols*, 2013 ME 71, ¶ 26, 72 A.3d 503 ("In considering the objective facts of the offense, a sentencing court may compare the crime committed to all the possible means of committing that offense by measuring the defendant's conduct on a 'scale' or 'continuum' of seriousness.")

[¶20] Contrary to Lester's arguments, there was nothing "laconic" about the court's analysis—the basis for its conclusion was clear; the court's treatment of comparable sentences was more than appropriate, *State v. Leng*,

2021 ME 3, ¶ 18, 244 A.3d 238 ("Consideration of comparable sentences . . . is at the discretion of the court."); and abandoning the victim to die after running her down is a proper consideration in determining the nature of the offense.[6]

### III.  CONCLUSION

[¶21]  For the reasons stated above, we conclude that the court's jury instructions on motive, intent, and premeditation were not erroneous; that the court did not commit obvious error by not giving an intoxication instruction *sua sponte*; and that the court did not misapply sentencing principles by setting the defendant's basic sentence at forty years.

The entry is:

Judgment affirmed.

---

[6] "[A]t step one the sentencing court . . . is required to measure the defendant's conduct on a scale of seriousness against all possible means of committing the crime in order to determine which acts deserve the most punishment." *State v. Gaston*, 2021 ME 25, ¶ 34, 250 A.3d 137 (quotation marks omitted).  The relevant factors are those relating to "the objective nature of the crime," in contrast with second-step factors, which are "peculiar to the individual offender." *State v. Plummer*, 2020 ME 143, ¶ 13, 243 A.3d 1184 (alteration and quotation marks omitted).  The act of immediately fleeing after running a victim down in a motor vehicle is a component of the offense and reflects the cold-blooded manner in which it was committed; thus, it is properly weighed in the first step of the court's analysis. *See State v. Reese*, 2010 ME 30, ¶¶ 29-30, 991 A.2d 806 (upholding the court's basic term of imprisonment of twenty-seven years and noting that the defendant, after shooting at the victim nine times and hitting her twice, had "left her along the road in the middle of the night").

Rory A. McNamara, Esq. (orally), Drake Law LLC, York, for appellant Raymond N. Lester

Aaron M. Frey, Attorney General, and Leanne Robbin, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Hancock County Unified Criminal Docket docket number CR-2022-584
FOR CLERK REFERENCE ONLY