MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:    2019 ME 16
Docket:      And-18-55
Argued:      September 13, 2018
Decided:     January 29, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

CHRISTOPHER W. ROY

HUMPHREY, J.

[¶1]   In this appeal, we address the effect of technology on the constitutional balance between the particularity and timeliness requirements of a search warrant and the ever-expanding digital space into which that search may reach.

[¶2]  Christopher W. Roy appeals from a judgment of conviction for three counts of possession of sexually explicit material of a minor under age twelve (Class C), 17-A M.R.S. § 284(1)(C) (2017), entered in the trial court (Androscoggin County, *MG Kennedy, J.*) after Roy pleaded guilty conditioned on his opportunity to appeal the denial of his motion to suppress.  M.R.U. Crim. P. 11(a)(2).  We affirm the judgment.

## I. BACKGROUND

[¶3]  Viewing the evidence in the light most favorable to the court's order denying the motion to suppress, the record supports the following facts.  *See State v. Sasso*, 2016 ME 95, ¶ 2, 143 A.3d 124.  On August 18, 2016, a detective with the Maine State Police Computer Crimes Unit used a file-sharing network to download a file of interest in child pornography investigations.  The detective determined that this file was made available by a device connected to a certain IP address.[1]  The detective later viewed the file, which included a video of a young girl, approximately three to five years of age, unclothed and being sexually abused by an adult.

[¶4]  The detective consulted with the United States Department of Homeland Security and learned that the IP address was registered to Time Warner Cable, a nationwide internet service provider.  On August 22, 2016, Time Warner informed the detective that Roy was the subscriber of the account associated with that IP address when the video file was downloaded and

---

[1]  An IP address is a "unique string of numbers . . . that identifies each computer using the Internet Protocol to communicate over a network."  *IP Address*, New Oxford American Dictionary (3d ed. 2010).  According to Techopedia.com, the IP address is a logical numeric address that is assigned to and identifies every computer or other device that connects to any internet-based communications network and is the "core component on which the networking architecture is built; no network exists without it."  *Internet Protocol Address*, Techopedia, https://www.techopedia.com/definition/2435/internet-protocol-address-ip-address (last visited Jan. 24, 2019).  For additional discussion of IP addresses, *see United States v. Vosburgh*, 602 F.3d 512, 527 (3d Cir. 2010); *United States v. Forrester*, 512 F.3d 500, 510 n.5 (9th Cir. 2008).

provided the detective with the account's service address in Maine. The address matched that of Roy on file with the Maine Bureau of Motor Vehicles.

[¶5] Based on this information, the detective prepared an affidavit and request for a search warrant. On August 31, 2016—thirteen days after learning that the downloaded file appeared on the file-sharing network by way of Roy's IP address—the detective sought and the court issued a warrant authorizing (a) the search of Roy's residence and property, outbuildings, vehicles, and persons on the property at the time the warrant was to be executed, and (b) in relevant part, the seizure of the following items believed to "constitute instrumentalities" of the crimes of illegal possession and dissemination of sexually explicit depictions of minors, 17-A M.R.S. §§ 283, 284 (2017):

1. Images of child pornography, in any form;

2. Records or images in any form pertaining to the manufacture, possession or receipt of child pornography;

3. Records or images in any form relating to the identity of the minors depicted in any seized images;

4. Records or images in any form reflecting personal contact with any of the minors depicted in any seized images;

5. Records or images in any form reflecting access to, or payment for access to, websites containing or relating to child pornography;

6. Computers, portable electronic devices and digital storage media of any kind . . . . [A]ny electronic system or device capable of storing and/or processing data in digital form,

4

including: central processing units; laptops or notebook computers; personal digital assistants; wireless communication devices such as telephone paging devices, beepers, and cellular telephones[;] peripheral input/output [devices] such as keyboards, printers, scanners, plotters, monitors, and drives intended for remova[ble] media; related communications devices such as modem[s], cables, and connections; storage media such as hard disk drives, floppy disks, thumb drive[s], magnetic tapes, and memory chips; and security devices; [and]

7. Evidence in any form suggesting a sexual interest in minors and their activities. These items are to include collections of photographs or magazines containing images of children [and/or] adolescents . . . .

[¶6] The next day, September 1, 2016, the police executed the search warrant and seized nearly 600 sexually explicit images of children that were stored on a cellular telephone and a microSD card (a small portable digital media storage device). The ages of the children depicted in the images seized ranged from under one year to nine years.

[¶7] In February 2017, a grand jury returned an indictment charging Roy with eight counts of possession of sexually explicit material of a minor under the age of twelve. *See* 17-A M.R.S. § 284(1)(C). Roy moved to suppress the evidence seized pursuant to the search warrant. After holding a hearing, on December 7, 2017, the court (Androscoggin County, *MG Kennedy, J.*) denied his motion.

[¶8]  In February 2018, Roy pleaded guilty, conditionally, to three counts of the indictment and the State dismissed the remaining five counts.  Roy timely appealed.

## II.  DISCUSSION

[¶9]  Roy argues that the court erred by not suppressing the seized evidence because the search warrant was stale, failed to describe items presumptively protected by the First Amendment with "scrupulous exactitude," and otherwise failed to describe the places to be searched and the items to be seized with sufficient particularity.

A.    Staleness

[¶10]  Roy contends that the court erred by denying his motion to suppress because the circumstances described in the affidavit supporting probable cause to issue a search warrant—information that the downloaded video file was from an IP address associated with Roy's computer—were thirteen days old when the warrant was issued, rendering the foundation for the warrant stale.  As a result, he argues, by the time the warrant was requested and issued, the affidavit provided no basis to conclude that the downloaded file was still in the place associated with Roy's IP address.

6

[¶11] When reviewing the denial of a motion to suppress on grounds that the information relied on for issuing a search warrant was stale, we review directly the finding of probable cause by the issuing judge, giving great deference to that determination, and we must draw all reasonable inferences that support the decision to issue the warrant. *State v. Wright*, 2006 ME 13, ¶ 8, 890 A.2d 703 (quotation marks omitted).

[¶12] "Probable cause exists when, based on the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Samson*, 2007 ME 33, ¶ 12, 916 A.2d 977 (quotation marks omitted). To meet this standard, the affidavit supporting the warrant must set forth some "nexus" between the information upon which the warrant relies and the location of the property to be seized. *Id.* ¶ 15. Whether probable cause still exists at the time a warrant is requested is determined not by the mere passage of time between observation of the evidence and application for the warrant but by the consideration of the unique facts and circumstances of the case at hand. *See State v. Crowley*, 1998 ME 187, ¶ 5, 714 A.2d 834 (time between circumstances and *request* for search warrant); *State v. Willey*, 363 A.2d 739, 742 (Me. 1976) (time between circumstances and *issuance* of search warrant). That timeframe, Roy

acknowledges, does not lend itself to a *per se* maximum period of time within which a search warrant must be sought. *See Wright*, 2006 ME 13, ¶ 9 & n.3, 890 A.2d 703.

[¶13] In *Wright*, we were presented with a similar challenge to the timeliness of a warrant in a child pornography investigation where at least eighty days had elapsed between the occurrence establishing probable cause and the issuance of the warrant. *Id*. ¶ 7. The affiant cited the opinions of experts in child pornography investigations to support his assertion that those who collect child pornography are "likely to retain the images" for long periods, sometimes "indefinitely," rather than disposing of them. *Id*. ¶¶ 7, 11. We held that in the context of a child pornography investigation, the passage of eighty days between the observation of a crime and the application for a warrant is not too long to render the information stale because of the demonstrated propensity of its consumers to retain the images for long periods of time. *Id*. ¶ 11; *see also United States v. Seiver*, 692 F.3d 774, 778 (7th Cir. 2012) (noting that a central inquiry into staleness in a child pornography investigation requires a "realistic understanding of modern computer technology and the usual behavior of its users"). Other courts have held that, in the context of a child pornography investigation, much longer periods of

8

time—even years—may pass without the information relied on for a warrant becoming stale.[2]

[¶14] In this case, the detective's affidavit describes practices by which electronic forms of child pornography are commonly received, collected, and retained for considerable lengths of time, and the affidavit outlines the detective's training and investigatory experience in child pornography cases. As in *Wright,* this detailed information is sufficient to demonstrate that, given the short time between the download on August 18 and the request for a warrant on August 31—only thirteen days—and considering the nature of the contraband at issue, the court had a substantial basis on which to conclude that the file of interest identified in the affidavit would still be in Roy's possession on his computer or accessible by his electronic devices. The information the court relied on was not stale and the court did not err in so ruling.

---

[2] *See*, *e.g.*, *United States v. Carroll*, 750 F.3d 700, 704 (7th Cir. 2014) (five years); *United States v. Frechette*, 583 F.3d 374, 378-79 (6th Cir. 2009) (sixteen months); *United States v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008) (three years); *United States v. Irving*, 452 F.3d 110, 115, 125 (2d Cir. 2006) (two to five years); *United States v. Hay*, 231 F.3d 630, 636 (9th Cir. 2000) (six months); *United States v. Horn*, 187 F.3d 781, 786-87 (8th Cir. 1999) (three months); *United States v. Lacy*, 119 F.3d 742, 745-46 (9th Cir. 1997) (ten months); *United States v. Harvey*, 2 F.3d 1318, 1322-23 (3d Cir. 1993) (two to fifteen months); *United States v. Coffin*, No. 1:17-cr-00025-JAW, 2018 U.S. Dist. LEXIS 17183, at *2-4, 11-12 (D. Me. Feb. 2, 2018) (one year); *United States v. Albert*, 195 F. Supp. 2d 267, 271-72 (D. Mass. 2002) (four to five months).

B.   Constitutional Adequacy

[¶15]   Roy next argues that the search warrant was constitutionally deficient in that (1) it did not describe the items to be seized with scrupulous exactitude, resulting in the seizure of material protected by the First Amendment for the ideas they contained, and (2) it otherwise failed to describe the places to be searched and the items to be seized with sufficient particularity. "[A] decision as to the constitutional adequacy of a search warrant is a matter of law" that we review de novo.  *State v. Pelletier*, 673 A.2d 1327, 1329 (Me. 1996) (footnote omitted).

1.   Scrupulous Exactitude

[¶16]  The Fourth Amendment requires "the most scrupulous exactitude" when the First Amendment protects the things to be seized, such as images, books, or magazines, "and the basis for their seizure is the ideas which they contain." *Stanford v. Texas*, 379 U.S. 476, 485 (1965).  "First Amendment rights and the scrupulous exactitude standard are not implicated, however, when the materials to be seized are sought as *evidence* of a crime and not for the ideas which they contain."  *State v. Lehman*, 1999 ME 124, ¶ 13, 736 A.2d 256 (emphasis added)(quotation marks omitted); *see also United States v. Stelten*, 867 F.2d 446, 450-51 (8th Cir. 1989).

[¶17] Roy argues that the warrant undermined these constitutional protections because it did not sufficiently limit the search to illegal items. He relies on a decision of the Washington Supreme Court invalidating a search warrant that authorized the seizure of "materials that were legal to possess, such as adult pornography and photographs that did not depict children engaged in sexually explicit conduct." *State v. Besola*, 359 P.3d 799, 800, 803 (Wash. 2015). The court determined that neither the warrant's reference to the child pornography statute nor its alleged application to images "material to the [child pornography] investigation" was sufficient to constitutionally circumscribe the scope of its authorization. *Id.*

[¶18] The warrant here suffers no such deficiency. Based on the affidavit supporting the application for issuance of a search warrant, the warrant authorized the seizure of certain items because there was probable cause to believe they contained evidence of Roy's illegal possession and dissemination of sexually explicit depictions of minors, not because of any particular ideas they might contain. *See Lehman*, 1999 ME 124, ¶ 14, 736 A.2d 256. The search warrant's description of the items to be seized and the purpose for their seizure did not implicate the heightened "scrupulous exactitude" standard.

## 2. Sufficient Particularity

[¶19]  Roy also contends that, even if the scrupulous exactitude standard does not apply, the warrant was overbroad and lacked the particularity required by the United States and Maine Constitutions because (1) it authorized an expansive search of all "computers, portable electronic devices and digital media of any kind" located on any person or at any place on Roy's property at the time of the search, and (2) it authorized a search for and seizure of "collections of photographs or magazines containing images of children and or adolescents."  "The issue of whether [a] search warrant lacks the required specificity as to the place and items to be searched is an issue of constitutional adequacy that we review de novo."  *Id.* ¶ 7.

[¶20]  The Fourth Amendment of the United States Constitution requires that a search warrant must "particularly describ[e]" the places to be searched and the things to be seized.  U.S. Const. amend. IV.  Similarly, Maine's Constitution requires that the warrant make a "special designation of the place to be searched, and the . . . thing to be seized."  Me. Const. art. I, § 5.[3]  A warrant

---

[3]  Article 1, section 5, provides that:

> The people shall be secure in their persons, houses, papers and possessions from all unreasonable searches and seizures; and no warrant to search any place, or seize any person or thing, shall issue without a special designation of the place to be searched,

12

must describe the property with "such particularity" that the executing officer can identify the item to be searched or seized "with certainty" and is left with no discretion as to what is to be taken. *Lehman*, 1999 ME 124, ¶ 8, 736 A.2d 256 (quotation marks omitted).

a.     Description of Devices

[¶21]  We have previously considered the particularity requirements of warrants to search computer files in child pornography investigations.  In *Lehman*, we held that a warrant was sufficiently particularized when it authorized the search of "all computer equipment and computer related equipment" and software that Lehman would have been able to access when he was alleged to have taken sexually explicit nude photographs of three underage girls with a digital camera and downloaded those photographs onto a computer in his home.[4]  *Id*. ¶¶ 2-3, 10.  We also rejected the argument that the warrant should have been limited to one particular computer in Lehman's residence that was specifically implicated by one of the three photographed girls because the other two girls stated that the images were downloaded to *a computer* in

---

and the person or thing to be seized, nor without probable cause—supported by oath or affirmation.

[4] The evidence included a "detached hard drive in the basement of Lehman's house."  *State v. Lehman*, 1999 ME 124, ¶ 4, 736 A.2d 256.

his home, not specifying *which computer* was used. *Id.* ¶ 11. We concluded that the nexus between the evidence sought and the places to be searched—all computers, computer-related equipment, and software in the home—was "as specific as the circumstances" of the allegations and "nature of the activity under investigation permit[ted]." *Id.* ¶ 10 (quoting *Davis v. Gracey*, 111 F.3d 1472, 1478 (10th Cir. 1997)).

[¶22] The First Circuit applied similar reasoning when it considered the particularity of a warrant authorizing the search of "[a]ny and all computer software and hardware . . . ." *United States v. Upham*, 168 F.3d 532, 535 (1st Cir. 1999). There, the defendant was alleged to have used a computer in a home to send and receive files containing child pornography over several months. *Id*. at 533. The defendant argued that the warrant was too broad in both its authorization of places to search (computer hardware and software) and in the scope of the content it was authorized to seize ("*any* image" of a minor). *Id*. at 535, 536 n.1. Rejecting both arguments, the court concluded that the scope of the warrant closely tracked the probable cause determination that a computer had been used to transmit the images, and thus "the computer and all available disks" were implicated by that determination. *Id*. at 535. The court also concluded that, despite the warrant's broad authorization, it was sufficiently

14

limited to depictions of minors "engaging in sexually explicit conduct [as defined by the statute]." *Id*. Given the basis for the probable cause determination, the search was "about the narrowest definable search and seizure reasonably likely to obtain the images" and "not inherently more intrusive than the physical search of an entire house for a weapon or drugs." *Id*.

[¶23] Here, Roy argues that the warrant is unconstitutionally broader than those in *Lehman* and *Upham* because it authorized the seizure of any "[c]omputers, portable electronic devices and digital storage media of any kind" located *on the property* associated with the IP address, *on any person* on the property, and *in any vehicle* on the property. We disagree.

[¶24] The digital world is not a static place; advancements in computer technology continue to make obtaining and accessing illicit digital files increasingly easy while making detection more difficult. *See, e.g.*, *United States v. Johnson*, 221 F.3d 83, 99 (2d Cir. 2000); *United States v. Knowles*, 207 F. Supp. 3d 585, 591-92, 604 (D.S.C. 2016); *United States v. Cunningham*, 680 F. Supp. 2d 844, 856 (N.D. Ohio 2010). Thus, when considering the nature and circumstances of Roy's alleged illegal activity, and the increased sophistication and mobility of devices capable of downloading, storing, and transmitting child pornography in the years since *Lehman* and *Upham* were

decided, the warrant's description of electronic devices that the officers were authorized to search and seize is not overly broad because of its authorization to search Roy's residence, property, and any persons and vehicles on his property at the time of the search, *see Lehman*, 1999 ME 124, ¶¶ 10-11, 736 A.2d 256 (acknowledging the inherent mobility of computer equipment), or because of its authorization to seize various electronic devices and digital media, *see Upham*, 168 F.3d at 533, 535 (concluding that the transmission of images depicting child pornography through the Internet from an account linked to the defendant established probable cause demonstrating a "sufficient chance of finding some needles in the computer haystack").

[¶25]  The warrant's authorization was as specific and limited as the circumstances would allow and satisfied the constitutional requirement for particularity.

b.    Description of Photographs and Magazines

[¶26]  The warrant authorized the police to search for and seize specified items believed to "constitute instrumentalities" of the crimes of illegal possession and dissemination of sexually explicit depictions of minors, including

> [e]vidence in any form suggesting a sexual interest in minors and their activities.  These items are to include collections of

> photographs or magazines containing images of children [and/or] adolescents . . . .

In spite of this limiting language, Roy argues that the warrant is overbroad because some photographs and magazines that contain images of minors are not evidence of criminal conduct. We need not reach this argument.

[¶27] In the abstract, it is correct that possession of some types of photographs or magazines depicting a minor is not criminal behavior and does not have evidentiary value. That may not be true, however, when the person in possession of such facially benign materials is also engaging in criminal conduct involving child pornography. On this appeal, we need not determine the location of that line because, even if this aspect of the warrant is overbroad, it is severable from the remaining portions of the warrant, which, for the reasons explained above, are lawful. *See State v. Simmons*, 2016 ME 103, ¶¶ 24-25, 143 A.3d 819. Electronic devices are "readily identifiable and distinguishable from" photographs and magazines with images of minors, and the information contained in the warrant about devices is the most significant part of the presentation. These factors allow legal portions of a warrant to be severed from any illegal parts of it. *See id.*

[¶28] Further, and significantly, the inventory of items seized pursuant to the warrant, *see* M.R.U. Crim. P. 41(g), which is included in the record

presented to the trial court, reveals that although the police seized a number of devices and electronic parts, they did not seize *any* photographs or magazines. This factor also weighs in favor of severance. *See Simmons*, 2016 ME 103, ¶ 26, 143 A.3d 819; *see also United States v. Richards*, 659 F.3d 527, 537 (6th Cir. 2011) (stating that an "[i]nfirmity due to overbreadth does not doom the entire warrant; rather, it requires the suppression of evidence seized *pursuant to that part of the warrant*, but does not require the suppression of anything described in the valid portions of the warrant" (alteration omitted) (emphasis added) (quotation marks omitted)).  Therefore, overbreadth, if any, in this portion of the warrant is severable from the remaining aspects of the warrant and would not require suppression of the evidence that was seized, because the seizure was wholly lawful.

[¶29]  The court did not err in denying the motion to suppress.

The entry is:

Judgment affirmed.

_____

Tina Heather Nadeau, Esq. (orally), The Law Office of Tina Heather Nadeau, PLLC, Portland, for appellant Christopher W. Roy

Andrew S. Robinson, District Attorney, and Patricia A. Mador, Asst. Dist. Atty. (orally), Lewiston, for appellee State of Maine

Androscoggin County Unified Criminal Docket docket number CR-2016-2917
FOR CLERK REFERENCE ONLY