MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2024 ME 55
Docket:      Som-23-326
Argued:      May 9, 2024
Decided:     August 1, 2024

Panel:        STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

STATE OF MAINE

v.

STEVEN EDWARDS

STANFILL, C.J.

[¶1]  Following a jury trial, Steven Edwards was convicted of eighteen counts of possession of sexually explicit material (Class C), 17-A M.R.S. § 284(1)(C) (2024).[1]  Edwards appeals from the judgment (Somerset County, *Mullen, C.J.*).  Edwards challenges the court's denials of his motion to suppress,

---

[1] 17-A M.R.S. § 284(1)(C) (2024) provides that:

A person is guilty of possession of sexually explicit material if that person: . . . [i]ntentionally or knowingly . . . possesses or accesses with intent to view any . . . computer data file . . . or any other mechanically, electronically or chemically reproduced visual image or material that the person knows or should know depicts another person engaging in sexually explicit conduct, and:

(1) The other person has not in fact attained 12 years of age; or

(2) The person knows or has reason to know that the other person has not attained 12 years of age.

motion for judgment of acquittal, motions for a mistrial, and motion for a new trial. We find no error and affirm his conviction.

## I. BACKGROUND

[¶2] On January 6, 2021, Edwards entered a plea of not guilty to an indictment charging him with nine counts of possession of sexually explicit material (Class C) under 17-A M.R.S. § 284(1)(C). The State later filed a superseding indictment that included nine additional counts of possession of sexually explicit material (Class C), to which he also pleaded not guilty. All charges were based on images found, upon execution of a search warrant, on computers in Edwards' possession.

[¶3] Edwards moved to suppress all evidence found on the computers, arguing that there was no probable cause for the warrant because the information in the affidavit supporting the application for the warrant was stale. After a hearing on August 12, 2022, the court denied the motion to suppress. The court found that the Maine State Police Computer Crimes Unit received referrals from the National Center for Missing and Exploited Children (NCMEC) alleging that on three separate dates, January 28, January 30, and February 26, 2019, potential child exploitation material had been uploaded

from an IP address[2] associated with a property in Mercer, Maine, later identified to belong to Edwards. Based on these tips from NCMEC, a Computer Crimes Unit detective presented a request for a search warrant to the court on August 8, 2019. The search warrant was signed by the court on the same day and executed the next day. The affidavit presented in support of the application included the Computer Crimes Unit detective's opinion that consumers of child pornography often keep images or evidence of images for significant periods of time and that even if such images are deleted, there is often evidence on the computer demonstrating that a consumer accessed the images. The affidavit also outlined the investigation undertaken between receipt of the tips and the request for a warrant, including the investigation's findings concerning the physical location of the IP address, that Edwards resided at the house at that location, that Edwards has an interest in child pornography, and that he had previous convictions while in the military for possession of child pornography and other sexual misconduct charges.

[¶4] The court held a jury trial on March 14-16, 2023. At the trial, the court heard testimony from the detective with the Computer Crimes Unit, a special

---

[2] According to the affidavit, the IP address "is a unique numerical label assigned to each device . . . participating in a computer network that uses the Internet Protocol for communication. . . . Every machine that is on the internet has an IP number. Every location has a unique IP number."

4

agent from Homeland Security Investigations who had examined Edwards's computers, and a computer forensics expert for the defense. The Computer Crimes Unit detective testified that Edwards told her he had been searching for adult pornography and that sexually explicit images came up that were "embarrassing, young, and really bad." Edwards also told her he "does not look for child pornography but that there is a gray area where a little girl can look older and an older girl can look younger." The special agent testified that he found in unallocated space on Edwards's computers multiple internet search terms that are used to search for sexually explicit images of minors. The special agent explained that unallocated space on a hard drive is where a file is stored when the "data is no longer needed. It's been marked for deletion, but it's not yet overwritten, so it's still resident in the spot it was in." He also located eighteen thumbnail images[3] in unallocated space on Edwards's computers. The court admitted in evidence the images, the evidence log from the search of Edwards's house, and a photograph of Edwards's house.

[¶5] After the State rested, Edwards moved for a judgment of acquittal, arguing that the State had not presented evidence sufficient to support a finding

---

[3] The agent testified that thumbnail images are "small pixelated images that as you zoom in on them, they get more gradient" or the "pictures that are on [a website's] landing page."

that Edwards possessed the images, that he accessed the images on eighteen separate occasions, or that the images depicted persons under the age of twelve. The court denied the motion. After the defense rested, Edwards renewed his motion for a judgment of acquittal; it was again denied.

[¶6] During the State's rebuttal closing argument, purportedly referring to the defense's comments about the adult and "barely legal" pornography found on Edwards's computers, the prosecutor stated, "Can you not tell the difference between an adult and a child? That is what this case is about. It's not the however many he possessed that we didn't charge him with." Edwards immediately objected and requested a mistrial. The court denied the motion for a mistrial but issued a curative instruction reminding the jury that closing arguments are not evidence and the jury should decide the case based solely on the evidence and the charges presented. After giving the curative instruction, the court also asked the jury if anyone would have a problem focusing only on the eighteen counts before them; the jurors indicated they would not.

[¶7] After having indicated to the court at the beginning of the day that he had no objections to the jury instructions, Edwards then stated, during the recess just prior to the court instructing the jury, that he did have a concern about the instructions. The court stated that it would give the previously

agreed-upon instructions and that Edwards could object when they were given. The court also indicated further concern about the State's statement during rebuttal. Edwards again objected to the jury instructions, but when the court asked for clarity as to the nature of his objection, Edwards's attorney did not elaborate, responding, "It's as clear as I can make it at this point, Judge."

[¶8] The jury found Edwards guilty on all eighteen counts. After the trial, Edwards renewed his motion for a judgment of acquittal and filed motions for a mistrial and for a new trial. After argument, the court denied all three motions on August 9, 2023.

[¶9] The court sentenced Edwards to three years' incarceration on Count 1. On Count 2, Edwards was sentenced to three years, all suspended, with six years' probation, to be served consecutively to Count 1. On Count 3, the court sentenced Edwards to three years, all suspended, with six years' probation, to be served consecutively to Count 2. On Count 4, he was sentenced to three years of incarceration, all suspended, with six years of probation, to be served consecutively to Count 3. On Counts 5 through 18, he was sentenced to three years' incarceration, all suspended, with six years' probation, to be served concurrently with Count 4 and with each other.

[¶10] Edwards timely appealed from the judgment of conviction and from the denial of his motions. *See* 15 M.R.S. § 2115 (2024); M.R. App. P. 2B(b)(1).

## II. DISCUSSION

### A. Motion to Suppress

[¶11] Edwards first argues that the court erred in denying his motion to suppress the evidence seized pursuant to the search warrant because the information that formed the basis for probable cause was stale by the time the warrant was issued. He argues that as a result there was insufficient cause to believe that the images would be at Edwards's house on the date of the application for a search warrant.

[¶12] "We review the factual findings supporting the denial of a motion to suppress evidence for clear error and the court's ultimate conclusions de novo. We will uphold the denial of a motion to suppress if any reasonable view of the evidence supports the trial court's decision." *State v. McNaughton*, 2017 ME 173, ¶ 28, 168 A.3d 807 (citations and quotation marks omitted).

[¶13] "Whether probable cause still exists at the time a warrant is requested is determined not by the mere passage of time between observation of the evidence and application for the warrant but by the consideration of the

unique facts and circumstances of the case at hand." *State v. Roy*, 2019 ME 16, ¶ 12, 201 A.3d 609. "In child pornography cases, if there is reasonable cause to believe that the material will be present when and where the search is to be conducted, staleness claims have been overcome for periods longer than the [eighty-day period] present here." *State v. Wright*, 2006 ME 13, ¶ 10, 890 A.2d 703; *see also Roy*, 2019 ME 16, ¶ 13 & n.2, 201 A.3d 609; *United States v. Seiver*, 692 F.3d 774, 778 (7th Cir. 2012) (noting that a central inquiry into staleness in a child pornography investigation requires "a realistic understanding of modern computer technology and the usual behavior of its users"). As we explained in *Roy*, in cases involving sexually explicit material of minors other courts have allowed years to pass without the information relied on for the issuance of a warrant becoming stale. *Roy*, 2019 ME 16, ¶ 13 & n.2, 201 A.3d 609.

[¶14] Although the period between the last tips from NCMEC in February and the issuance of the warrant in August was longer than the periods of time we deemed permissible in *Wright* and *Roy*, we have never set a limit on the maximum time allowed before information leading to probable cause becomes stale. Instead, staleness is a fact-specific inquiry based on the circumstances of each case. Here, there was nothing affirmatively suggesting that the

information could have been stale, such as a change in the IP address or internet subscriber for Edwards's street address in the intervening months. Edwards's documented interest in child pornography, his previous conviction for possession of child pornography, and the multiple CyberTips received regarding the same IP address, together with known characteristics of people who access electronic child pornography, all combined to provide probable cause to believe that the material would be there when the warrant was executed.

[¶15] Given the facts of this case, we conclude that the suppression court did not err in concluding that the information in the affidavit was not stale, in determining that there was probable cause to issue the search warrant, or in denying Edwards's motion for suppression.

## B.    Motion for Judgment of Acquittal

[¶16] Edwards next argues that the court erred in denying his motion for judgment of acquittal because there was insufficient evidence that he possessed or accessed child sexual exploitative material with intent to view it.[4]

---

[4] Before the trial court, Edwards argued that there was insufficient evidence that the images depicted persons under the age of twelve. Although he has abandoned that argument on appeal, we note there is sufficient evidence that the persons depicted were under the age of twelve.

10

[¶17]  "When reviewing a judgment for sufficiency of the evidence, we view the evidence in the light most favorable to the State to determine whether the fact-finder could rationally have found each element of the offense beyond a reasonable doubt.  We defer to all credibility determinations and reasonable inferences drawn by the fact-finder, even if those inferences are contradicted by parts of the direct evidence."  *State v. Hansley*, 2019 ME 35, ¶ 19, 203 A.3d 827 (quotation marks omitted).  "[O]ur review does not intrude on the jury's role to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Id.* ¶ 22 (quotation marks omitted).

[¶18]  Edwards argues that because the images found on his computers were thumbnails, rather than full-size images, and because they were found in unallocated space, there is insufficient evidence to support his conviction for possessing or accessing sexually explicit material with the intent to view it.[5]  Edwards specifically claims that unallocated space is not accessible to the computer user without software and that there was no evidence of that type of

---

[5]  In an argument related to his sufficiency argument, Edwards argues that the court erred in its instructions to the jury.  This argument is unpersuasive, and we do not discuss it further.

software on Edwards's computers. He argues that as a result, the evidence is insufficient to find that he "possessed" the images.

[¶19] To be found guilty of possession of digital images, an individual must have "held, owned, or controlled the digital images in question." *State v. Wilson*, 2015 ME 148, ¶ 17, 127 A.3d 1234. In *Wilson*, we held that the presence of thumbnail images found in unallocated space was sufficient to support a conviction for possession of sexually explicit materials. *Id.* ¶¶ 13-19. Although the original "videos that generated the thumbnail images may have been deleted, . . . the thumbnail images remained." *Id.* ¶ 5. In *Wilson*, we noted that there was evidence, similar to the evidence here, that "when programs that scrub or delete images after viewing are used to remove illegal videos or images from a computer, the programs often leave thumbnail images of the videos or images that had existed on the computer. Such thumbnail images, like those discovered in this case, appear in the unallocated space on the computer." *Id.* ¶ 5 n.4. In short, "circumstantial evidence [was] no less conclusive than direct evidence" that Wilson had "owned and viewed those images." *Id.* ¶ 18 (quoting *State v. Reed*, 2013 ME 5, ¶ 13, 58 A.3d 1130).

[¶20] Here, like in *Wilson*, the State offered both direct and circumstantial evidence that Edwards had held, owned, or controlled sexually

explicit images. Edwards admitted to law enforcement that he had searched for adult pornography, that "there is a gray area where a little girl can look older and an older girl can look younger" in pornography, and that sexually explicit images that were "embarrassing, young, and really bad" appeared. There were multiple search terms found on Edwards's computers that are frequently used to search for sexually explicit images of minors. There were eighteen separate sexually explicit thumbnail images of children under the age of twelve found on his computers. The jury rationally could have found all elements of the offense beyond a reasonable doubt. *See State v. Beckwith*, 2015 ME 72, ¶ 10, 117 A.3d 1049.

## C.    Motions for a Mistrial and New Trial

[¶21]   Finally, Edwards argues that the court erred in denying his motions for a mistrial and his motion for a new trial because the prosecutor's reference to uncharged conduct affected his substantial rights. The State concedes that the prosecutor's comment was improper but argues that there was no prosecutorial bad faith or exceptionally prejudicial circumstances and that the curative instruction was sufficient.

[¶22]   "Our review of a trial court's denial of a motion for a mistrial is highly deferential." *State v. Carillo*, 2021 ME 18, ¶ 19, 248 A.3d 193. "We review

the court's denial of a motion for mistrial only for an abuse of the court's substantial discretion." *Id.* When reviewing a prosecutor's comments at issue in a motion for a mistrial, we "must consider the totality of the circumstances, including the severity of the misconduct, the prosecutor's purpose in making the statement (i.e., whether the statement was willful or inadvertent), the weight of the evidence supporting the verdict, jury instructions, and curative instructions." *Id.* ¶ 18 (quotation marks omitted). "Because of its significant effect on the proceedings, [a] motion for a mistrial should be denied except in . . . rare circumstance[s], that is, only in the event of exceptionally prejudicial circumstances or prosecutorial bad faith." *Id.* (quotation marks omitted).

[¶23] "We review the trial court's decision on a motion for a new trial for an abuse of discretion and any findings underlying its decision for clear error." *State v. Abdullahi*, 2023 ME 41, ¶ 41, 298 A.3d 815 (quotation marks omitted).

[¶24] "On appeal, even if a claim is preserved and error was committed, that error does not warrant relief unless it affect[s] substantial rights." *State v. White*, 2022 ME 54, ¶ 30, 285 A.3d 262 (quotation marks omitted). "A remedial measure less drastic than ordering a mistrial, such as a curative instruction, may be sufficient to preserve a fair trial for the defendant." *State v. Hinds*, 485 A.2d 231, 237 (Me. 1984).

[¶25]  As discussed above, the Computer Crimes Unit detective testified that when discussing the search warrant, Edwards admitted to searching for pornography and that "embarrassing, young, and really bad" stuff came up. Edwards additionally told her that "he does not look for child pornography but that here is a gray area where a little girl can look older and an older girl can look younger."  In his closing argument, Edwards's counsel discussed the adult pornography and the searches for "barely legal pornography" and emphasized that those were legal and that the sexually explicit material may have gotten onto the computers through those searches.  In response, during rebuttal, the prosecutor stated, "Can you not tell the difference between an adult and a child? That is what this case is about.  It's not the however many he possessed that we didn't charge him with."

[¶26]  The State has conceded error.  Although purportedly referring to the "barely legal" and adult pornography that Edwards's attorney discussed in his closing, the prosecutor's statements could have been understood to be referring to other images depicting sexually explicit material of minors that the State did not charge Edwards with, of which no evidence had been presented. A discussion of uncharged conduct not admitted into evidence constitutes error.

[¶27]   Nonetheless, we must determine "whether the trial court's response remedied any prejudice resulting from the [error]." *State v. Tripp*, 2024 ME 12, ¶ 27, 314 A.3d 101 (quotation marks omitted).

> We will generally defer to the determination of a presiding Justice, who has the immediate feel of what is transpiring, that a curative instruction will adequately protect against the jury giving consideration to matters which have been heard but have been stricken as evidence. Any concern created by improper statements made by a prosecutor is likely to be cured by a prompt and appropriate curative instruction, especially when such an instruction is specifically addressed to the prosecutor's [error]. Therefore, a curative instruction will only be deemed inadequate to eliminate prejudice where there are exceptionally prejudicial circumstances or prosecutorial bad faith.

*Id.* (quotation marks and citations omitted); *see also State v. Daluz*, 2016 ME 102, ¶ 45, 143 A.3d 800 ("[T]rial courts possess a greater ability to perceive the fairness of trial proceedings than can a reviewing court on appeal."). "[T]rials are inherently imperfect and unintended errors inevitably occur." *State v. Pabon*, 2011 ME 100, ¶ 28, 28 A.3d 1147. We "must presume that the jury heeds the [trial] court's instruction[s]." *State v. Scott*, 2019 ME 105, ¶ 23, 211 A.3d 205 (quotation marks omitted).

[¶28]  Here, although the prosecutor's rebuttal argument was concededly inappropriate, there was no exceptionally prejudicial circumstance or prosecutorial bad faith.  The prosecutor was apparently responding to the

defense argument, albeit imprecisely. The court immediately issued a specific curative instruction that stated that closing arguments are not evidence and that the jury was to consider solely the evidence that was presented. This instruction was specific to the error and was sufficient to correct the error and eliminate any resulting prejudice. To ensure the curative instruction was sufficient, the court additionally asked the jurors if anyone would be unable to follow the curative instruction, and the jurors all answered that they could. The trial court did not err or abuse its discretion in denying Edwards's motions for a mistrial and for a new trial based on prosecutorial error.

[¶29] Because the court did not err or abuse its discretion in denying any of Edwards's motions, we affirm the conviction.

The entry is:

> Judgment affirmed.

---

Peter J. Cyr, Esq. (orally), The Law Offices of Peter J. Cyr, Esq., Portland, for appellant Steven Edwards

Maeghan Maloney, District Attorney, and Paul Cavanaugh, Asst. Dist. Atty. (orally), Office of the District Attorney, Skowhegan, for appellee State of Maine