MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2026 ME 54
Docket:       Cum-25-217
Argued:       December 10, 2025
Decided:      June 9, 2026

Panel:        STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, and DOUGLAS, JJ.

## STATE OF MAINE

v.

## JODY B. FLYNN

CONNORS, J.

[¶1]  Jody B. Flynn appeals from a judgment of conviction of theft by deception (Class B), 17-A M.R.S. § 354(1)(B)(1) (2026), and intentional or knowing securities fraud (Class C), 32 M.R.S. § 16501(2) (2026); 32 M.R.S. § 16508(1) (2013),[1] entered by the trial court (Cumberland County, *McKeon, J.*) after a combined  bench trial on the charge of securities fraud and jury trial on the charge of theft.  Flynn contends that the evidence was insufficient to support her convictions and that the court erred or abused its discretion by admitting hearsay evidence and conditionally admitting Flynn's prior indictment.  We affirm.

---

[1] Section 16508(1) was amended during the course of criminal conduct, but the amendment does not affect this appeal.  *See* P.L. 2013, ch. 39, § 2 (effective October 9, 2013) (codified at 32 M.R.S. § 16508(1) (2026)).

## I.  BACKGROUND

### A.    Factual Background

[¶2]  Viewing the evidence admitted at trial in the light most favorable to the verdicts, the factfinders could have found the following beyond a reasonable doubt.  *See State v. Quirion*, 2025 ME 75, ¶ 2, 340 A.3d 662; *State v. Pelletier*, 2023 ME 74, ¶ 2, 306 A.3d 614.

[¶3]  Flynn created an entity named Icy Gulch Resources, LLC and raised money from five investors who invested in Icy Gulch in the form of subscription agreements and short-term loans, which are securities under Maine law.  *See* 32 M.R.S. § 16102(28) (2026).  She communicated false or misleading information to the investors and omitted material information in order to convince them to invest initially and to continue to invest.

[¶4]  For example, Flynn told the investors that Icy Gulch had a stake in three different ventures, including a project purporting to control the gum arabic[2] market in Sudan, but Icy Gulch never had a stake in any of these ventures, and Flynn had no specific plan as to how these projects would result in a financial benefit for the Icy Gulch investors.

---

[2]  Gum arabic is "a water-soluble gum obtained from several acacias . . . used particularly in the manufacture of adhesives, inks, confectionery, in textile finishing, and in pharmacy."  *Gum Arabic*, Webster's Third New International Dictionary of the English Language Unabridged (2002).

[¶5]   Flynn told the investors that certain wealthy and influential individuals were involved in Icy Gulch's deals, although Flynn knew that these statements were false.

[¶6]   Flynn also did not use the funds from the investors for their intended purpose, comingling investor money with personal assets and using a significant portion of that money for her personal expenditures.[3]   She never told the investors that their investments would pay for her personal expenses, nor did she receive their permission to use the investments for this purpose.

[¶7]   In total, the five investors invested $786,000 in Icy Gulch and $936,000 among all of Flynn's projects.   Flynn deposited $913,800 of the $936,000 into bank accounts that she owned and controlled.   None of the investors recovered their initial investments, nor did they receive any return on their investments.

## B.    Procedural History

[¶8]   In May 2019, the State charged Flynn with one count of theft by deception (Class B), 17-A M.R.S. § 354(1)(B)(1), and one count of knowing or

---

[3]   For example, Flynn spent investment funds at Cinemagic, the Common App for college applications, dental providers, DirecTV, Duckfat, Hannaford, Home Goods, Nordstrom's, Oasis Nails & Spa, the Paint Pot, the Palms in Turks & Caicos, Portland Mattress Makers, Pottery Barn, Prime Motor Cars, Saks Fifth Avenue Boston, Siano's Pizza, the South Portland Veterinary Hospital, Suntan City, Time Warner Cable, Whole Foods, and Yarmouth Auto Care.

4

intentional securities fraud (Class C), 32 M.R.S. §§ 16501, 16508(1).  On the first day of trial, October 28, 2024, Flynn waived her right to a jury with respect to the securities fraud count, retaining the theft by deception count to be decided by the jury.

### 1.    Use of Flynn's 2012 Indictment

[¶9]  In February 2012, in a separate action around the time that Flynn began soliciting funds from the Icy Gulch investors, Flynn was indicted for Class B theft by unauthorized taking or transfer, 17-A M.R.S. § 353(1)(B)(1) (2026).  *State v. Flynn*, 2015 ME 149, ¶ 3, 127 A.3d 1239.  That charge against Flynn was based on her failure in late 2009 and early 2010 to return a $500,000 exclusivity or good faith deposit to the would-be buyer of a paper mill for which Flynn was essentially acting as an escrow agent.  *Id.* ¶¶ 5-12.  "Despite acknowledging an obligation to return at least $264,604.14 to the prospective purchasers . . . Flynn transferred most of the $500,000 exclusivity deposit . . . to her personal accounts, including an account Flynn shared with her college-age child and an account for her other business."  *Id.* ¶ 11.  Flynn was ultimately convicted in that matter on August 15, 2014, and we affirmed her conviction in November 2015.  *Id.* ¶¶ 16, 39.

[¶10]   Although Flynn began soliciting funds relating to the instant charges in October 2011, prior to the 2012 indictment, nearly all of the transactions in this case occurred after Flynn's 2012 indictment but before her conviction in that matter.  Flynn failed to disclose the 2012 indictment to most of the five investors involved in the instant transactions.

[¶11]   Prior to trial, the State filed a motion in limine to introduce evidence of Flynn's 2012 indictment, arguing that it was probative of Flynn's knowledge of wrongdoing with respect to the transactions in the instant case. The trial court did not allow that indictment to be admitted as part of the State's case in chief.  Instead, it ruled that only if Flynn testified that she had not known that using investor money for personal expenses was problematic would the State be permitted to question Flynn regarding the fact that she was under indictment for using investor money for personal expenses in the prior case at the same time that she was using investor money for personal expenses in the instant case.

[¶12]  At trial, Flynn testified but did not deny knowing that she could not use investor money for personal expenses, and so the 2012 indictment was never introduced to the jury.

6

### 2. The Evidence at Trial

[¶13] At trial, the investors testified about their communications with Flynn and her representations inducing them to invest. Each investor testified that the investor did not authorize Flynn to spend the invested money on her own personal expenses.

### 3. Conviction, Post-Trial Motions, Sentencing, and Appeal

[¶14] The jury found Flynn guilty on the theft by deception count on November 4, 2024. Flynn filed motions for judgment of acquittal and a new trial, and on January 16, 2025, the court issued a decision and order denying those motions and finding Flynn guilty on the securities fraud count. The State filed a motion for additional findings of fact and conclusions of law regarding the securities fraud count, *see* M.R.U. Crim. P. 23(c), which the court granted in part and denied in part. In April 2025, the court sentenced Flynn to three years' imprisonment with all but nine months suspended for theft by deception and nine months for securities fraud, to be served concurrently, and Flynn was released on her own recognizance pending appeal. She timely appealed from the judgment of conviction. *See* M.R. App. P. 2B(b)(1).

## II. DISCUSSION

[¶15]  Flynn raises three arguments on appeal: (1) the evidence was insufficient to support the convictions; (2) the court improperly admitted hearsay evidence; and (3) the court deprived Flynn of her right to testify by ruling that the State could introduce the 2012 indictment if she testified that she had not known that using investor money for personal expenses was problematic.[4]  We address the three arguments seriatim.

### A.    The evidence was sufficient to support the convictions.

[¶16]  "When a defendant challenges the sufficiency of the evidence supporting a conviction, we determine, viewing the evidence in the light most favorable to the State, whether a trier of fact rationally could find beyond a reasonable doubt every element of the offense charged."  *State v. MacKenzie*, 2025 ME 79, ¶ 27, 345 A.3d 8 (quotation marks omitted).  We "defer to all credibility determinations and reasonable inferences drawn by the fact-finder, even if those inferences are contradicted by parts of the direct evidence."  *State v. Edwards*, 2024 ME 55, ¶ 17, 320 A.3d 387 (quotation marks omitted).

---

[4]  Flynn additionally contends that the court erred in denying her post-judgment motions for acquittal and for a new trial, but she does not provide any legal analysis explaining why the court erred in denying these motions.  These issues are thus waived.  *See Mehlhorn v. Derby*, 2006 ME 110, ¶ 11, 905 A.2d 290 ("An issue that is barely mentioned in a brief is in the same category as an issue not mentioned at all."); Alexander, *Maine Appellate Practice* § 404 at 242 (6th ed. 2018) ("An issue may be viewed as waived or forfeited for lack of appellate development if it is addressed in briefing only in a perfunctory manner that does not demonstrate some effort to articulate the argument.").

### 1. Theft By Deception

[¶17] "A person is guilty of theft if . . . [t]he person obtains or exercises control over property of another as a result of deception and with intent to deprive the other person of the property." 17-A M.R.S. § 354(1)(A). When the value of the stolen property is more than $10,000, as is the case here, theft by deception is a Class B crime. *Id.* § 354(1)(B)(1).

[¶18] The evidence admitted at trial amply supported Flynn's theft by deception conviction. Bank statements proved that the investors sent $936,000 to Flynn and Icy Gulch to invest in various ventures. Copious emails and testimony from the investors illustrate that Flynn deceived the investors into believing that they were investing in these ventures through Icy Gulch, yet Flynn knew that Icy Gulch had no stake in those ventures. Flynn provided positive updates regarding the investments, contrary to the facts known to her. Financial records showed that, unbeknownst to the investors, Flynn diverted hundreds of thousands of dollars of the investor money to herself personally rather than to the ventures.

[¶19] The gravamen of Flynn's argument is that the evidence was insufficient to show that she had the necessary intent to deceive. But "[t]he finding that a defendant possessed the requisite *mens rea* need not be proved

by direct evidence; rather, the fact-finder may look to the act itself, the attendant circumstances, and any other evidence tending to prove the defendant's mental state, from which evidence . . . all reasonable inferences may be drawn." *State v. Asaad*, 2020 ME 11, ¶ 9, 224 A.3d 596 (citations and quotation marks omitted). "The weight to be given to the evidence and the determination of witness credibility are the exclusive province of the jury." *State v. Marden*, 673 A.2d 1304, 1312 (Me. 1996). Given the evidence presented, the jury was free to conclude that Flynn's diversion of funds was not simply faulty bookkeeping.

### 2. Securities Act Violation

[¶20] Under the Maine Uniform Securities Act, "[i]t is unlawful for a person, in connection with the offer, sale or purchase of a security, directly or indirectly . . . [t]o make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 32 M.R.S. § 16501(2).

[¶21] The court found that two transactions, including one involving the Sudanese gum arabic project described above, met the elements of this crime. As to that transaction, Flynn emailed an investor that "we" have been assigned

the rights to harvested and unharvested gum arabic in Sudan. She asked the investor for an investment for "our part" of the "'get it done' costs," writing, "We . . . own this one and control the now and future," although she knew that the money was going to go to different purposes, including her personal expenses. When the investor then wired a short-term loan of $20,000 to Icy Gulch to invest in the pre-operating and development costs of the gum arabic project as Flynn had represented it, Flynn did not use this $20,000 to develop the gum arabic project. Instead, she used most of the $20,000 to pay her personal expenses.

[¶22] As the court noted, had Flynn disclosed that the money was going to be used to cover business and personal expenses incurred by her involvement in the transactions ultimately "to bring some reward to the investors, her use of the money [might] have been appropriate." But she "did not disclose that and she misled the investors to believe that their money was to fund the projects. That is the type of disclosure compelled by § 16501. The Legislature intended to impose a duty on the sellers of security not to mislead their buyers by omitting facts necessary to make the statements that they make not misleading." The court's interpretation of the statute is not challenged, and its factfinding is supported by the evidence.

**B.** **Flynn's hearsay argument was waived, and she failed to identify any improperly admitted hearsay evidence.**

[¶23] We "review a trial court's ruling to admit or exclude alleged hearsay evidence for an abuse of discretion, and will find an abuse of discretion if a party can demonstrate that the trial court exceeded the bounds of the reasonable choices available to it." *State v. Lindell*, 2020 ME 49, ¶ 13, 229 A.3d 791 (quotation marks omitted).

[¶24] In her principal brief, Flynn observes that she made "dozens" of objections to evidence that was admitted over those objections. She fails, however, to identify a single example of an improperly admitted piece of hearsay evidence, stating that these "are too numerous to replicate in this brief," and "invit[ing] the court to review the record."

[¶25] To adequately develop an argument on appeal, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). The only citation of any specific piece of evidence as to which Flynn complains was improperly admitted is first identified in her reply brief. A reply brief comes too late, however, to avoid waiver of an argument. *See State v. Smith*, 2024 ME 56, ¶ 20 n.6, 320 A.3d 405 (arguments not made in the principal brief are

waived); *United States v. Freitas*, 904 F.3d 11, 22 (1st Cir. 2018) ("[A]s a general rule, one cannot use a reply brief to develop an argument cursorily made in an opening brief.").

[¶26] As provided in M.R. App. P. 7A(c), "Any reply brief filed by the appellant must be strictly confined to replying to new facts asserted or arguments raised in the brief of the appellee." Among other things, failing to adequately identify and develop an argument in an appellant's principal brief deprives the appellee of its ability to address the argument. *See EIMSKIP v. Atl. Fish Mkt., Inc.*, 417 F.3d 72, 78 (1st Cir. 2005). When Flynn alluded to rampant improper use of hearsay evidence in her opening brief without identifying any specific instance, this left the State in its brief only able to explain generally why the evidence admitted over a six-day trial was admissible, and rendered it unable to defend the admissibility of any of the specific pieces of evidence that Flynn identified in her reply brief. We therefore rule that Flynn's hearsay argument was waived.

[¶27] We nonetheless note that Flynn's argument lacks merit. Hearsay "means a statement that (1) [t]he declarant does not make while testifying at the current trial or hearing; and (2) [a] party offers in evidence to prove the truth of the matter asserted in the statement." M.R. Evid. 801(c). In her reply

brief, Flynn cites evidence such as testimony by the investors as to what Flynn had told them and emails from Flynn to the investors. Flynn's statements are admissible pursuant to M.R. Evid. 801(d)(2)(A) as an opposing party's statements and, as the court explained repeatedly at trial and as the jury was repeatedly instructed, the communications included in the exhibits were not hearsay because the evidence was not being offered for the truth of the matter. *See Flynn*, 2015 ME 149, ¶ 22, 127 A.3d 1239 ("Flynn's own email statements or email communications, like other statements by criminal defendants, were not hearsay and were properly admitted pursuant to M.R. Evid. 801(d)(2) (Tower 2014)."); *United States v. McDonnel*, 550 F.2d 1010, 1012 (5th Cir. 1977) ("Appellant misses the point. The government introduced the statements not to prove the truth of the matter asserted. On the contrary, the point was to prove that the statements were made so as to establish a foundation for later showing, through other admissible evidence, that they were false. The hearsay rule does not apply."); Merritt, *Trial Handbook for Maine Lawyers* § 28:2 (2026 ed.) ("[O]ut-of-court statements which are not hearsay are those which would be hearsay if offered to prove that the statement is true but are admissible because they are offered to prove something else.").

14

**C.** **The court did not abuse its discretion regarding the conditional use of the 2012 indictment.**

[¶28]  Flynn asserts that the court violated Rule 404(b) of the Maine Rules of Evidence by allowing the State to introduce evidence of Flynn's prior indictment at the jury trial if Flynn first testified that she did not know that her behavior was wrong, and that by so ruling, the court deprived Flynn of the ability to defend herself.

[¶29]  We review for clear error a court's decision to admit evidence of prior bad acts pursuant to M.R. Evid. 404(b).  *State v. Osborn*, 2023 ME 19, ¶ 17, 290 A.3d 558.  Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  M.R. Evid. 404(b).  Nevertheless, "evidence of prior bad acts may be admissible 'for any other permissible purpose, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'"  *Osborn*, 2023 ME 19, ¶ 17, 290 A.3d 558 (quoting *State v. Pillsbury*, 2017 ME 92, ¶ 22, 161 A.3d 690).

[¶30]  As a threshold matter, no prior bad act evidence was admitted at trial.  The court did not err in ruling that the State could reference Flynn's 2012 indictment under the limited circumstances it articulated because the

indictment was not evidence of a prior bad act but was evidence that Flynn knew that her use of investor funds for personal expenses was wrong. Allowing the 2012 indictment to be mentioned only if Flynn testified that she did not know it was wrong was a proper balance of weighing the probative value of the indictment versus unfair prejudice. *See* M.R. Evid. 403; *Osborn*, 2023 ME 19, ¶ 19, 290 A.3d 558 (stating that "[w]e review a trial court's weighing of probative value against the danger of unfair prejudice for an abuse of discretion," and concluding that prior bad act evidence in that matter was not admissible).

[¶31] Flynn complains that the ruling hamstrung her from testifying that her actions were innocent.[5] But nothing prevented Flynn from attempting to explain why she did not understand that the diversion of the funds for her personal expenses was wrong. To the extent that Flynn is arguing that the reference to the 2012 indictment—if it were introduced—would undermine whatever explanation she otherwise intended to provide, "[i]t is well

---

[5] Flynn argues:

> To say that the prior indictment was "very prejudicial" is an understatement. [Flynn's] whole defense in this case relied on her ability to explain that, while she engaged in poor book keeping and spent funds on personal expenditures, she did not commit theft. The jury might or might not have accepted that explanation, but the Court's ruling on the devastatingly prejudicial prior indictment prevented the defense from even attempting to explain [Flynn's] behavior.

established that a criminal defendant's right to testify does not include the right to commit perjury." *State v. Grindle*, 2008 ME 38, ¶ 17, 942 A.2d 673 (quoting *LaChance v. Erickson*, 522 U.S. 262, 266 (1998)).

The entry is:

> Judgment of convictions and order denying post-trial motions affirmed.

---

James P. Howaniec, Esq. (orally), Lisbon, for appellant Jody Flynn

Aaron M. Frey, Attorney General, and Elizabeth T. Weyl, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2019-2456
FOR CLERK REFERENCE ONLY